PROVENCHER ET AL., APPELLEES, *v.* OHIO DEPARTMENT OF TRANSPORTATION, APPELLANT.

[Cite as Provencher *v.* Ohio Dept. of Transp. (1990), 49 Ohio St. 3d 265.]

(No. 88-2062 — Submitted January 10, 1990—Decided March 14, 1990.)

*Sindell, Rubenstein, Einbund, Pavlik, Novak & Celebrezze, Lewis Einbund* and *Terry A. Bryer,* for appellees.

*Anthony J. Celebrezze, Jr.,* attorney general, *David C. Calderhead* and *Simon B. Karas,* for appellant.

HOLMES, J. The single issue presented for our review concerns the duty of care owed by the state of Ohio to persons using public roadside rest area facilities. We are asked to recognize the "public invitee" standard, as set forth in 2 Restatement of the Law 2d, Torts (1965), Section 332(2), which imposes a duty, upon the owner or occupier, of ordinary care in maintaining his or her premises in a safe condition where persons are merely invited to enter. For the reasons which follow, we decline to adopt the "public invitee" standard.

This court has defined an "invitee" as "* * * a business visitor [or business invitee], that is, one rightfully on the

premises of another for purposes in which the possessor of the premises has a beneficial interest." *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308, 328-329, 46 O.O. 177, 186, 102 N.E. 2d 453, 463; see, also, *Light* v. *Ohio University* (1986), 28 Ohio St. 3d 66, 68, 28 OBR 165, 167, 502 N.E. 2d 611, 613. In *Light,* in holding that users of gymnasium facilities of a state university were licensees, the court distinguished licensees and invitees. We stated that "[b]usiness invitees are persons who come upon the premises of another, by invitation, express or implied, for some purpose which is beneficial to the owner. *Scheibel* v. *Lipton* (1951), 156 Ohio St. 308 [46 O.O. 177]. It is the duty of the owner of the premises to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition. *Presley* v. *Norwood* (1973), 36 Ohio St. 2d 29, 31 [65 O.O. 2d 129]. Conversely, a person who enters the premises of another by permission or acquiescence, for his *own* pleasure or benefit, and not by invitation, is a licensee. A licensee takes his license subject to its attendant perils and risks. The licensor is not liable for ordinary negligence and owes the licensee no duty except to refrain from wantonly or willfully causing injury. *Hannan* v. *Ehrlich* (1921), 102 Ohio St. 176, paragraph four of the syllabus; see *Scheurer* v. *Trustees of the Open Bible Church* (1963), 175 Ohio St. 163 [23 O.O. 2d 453]." *Id.* at 68, 28 OBR at 167, 502 N.E. 2d at 613-614.

Appellees maintain that the increased safety of Ohio's highways which results from highway travelers' use of the rest areas is of sufficient benefit to the state of Ohio to confer in-vitee status upon all highway travelers who stop at the rest areas. We disagree. Appellees have failed to set forth any facts that would indicate that Mrs. Provencher's activities at the roadside rest area on June 6, 1985 were for the purpose of conducting business with ODOT. Furthermore, appellees have not set forth any benefit received by ODOT due to Mrs. Provencher's visit to its roadside rest area. Increased safety on the highways is not the type of benefit intended under our prior decisions in *Scheibel, supra,* and *Light, supra.* Moreover, any advantage to highway safety measured in this sense is intangible and not easily calculated. Therefore, we find that there was no benefit conferred upon the state or ODOT in Mrs. Provencher's use of the roadside rest area facility.

Alternatively, appellees suggest we adopt the "public invitee" standard as set forth in Section 332 of the Restatement of the Law 2d, *supra,* at 176, which states:

"(1) An invitee is either a public invitee or a business visitor.

"(2) A public invitee is a person who is invited to enter and remain on land as a member of the public for a purpose for which the land is held open to the public.

"(3) A business visitor is a person who is invited to enter or remain on land for a purpose directly or indirectly connected with the business dealings with the possessor of the land."

The economic (or tangible) benefit test has long been recognized in this court in order to distinguish the status of an invitee from that of a licensee.[1] See *Scheibel, supra; Light, supra.* On the other hand, the "public invitee"

---

[1] In reviewing decisions from some other jurisdictions, we have found the determination of whether an individual is an "invitee" to include some type of benefit analysis. See, *e.g., Socha* v. *Passino* (1981), 105 Mich. App. 445, 447-448, 306 N.W. 2d 316, 317 (while adopting the Restatement's classification of "invitee," the court defined

standard looks simply to whether an invitation has been implied or expressed to the visitor. Specifically, under the invitation test the economic benefit between the parties is not essential. "Rather it bases 'invitation' on the fact that the occupier [in this instance, the state] by his arrangement of the premises or other conduct has led the entrant to believe 'that [the premises] were intended to be used by visitors' for the purpose that this entrant was pursuing, 'and that such use was not only acquiesced in by the owner [or possessor], but that it was in accordance with the intention and design with which the way or place was adapted and prepared. * * *' " 5 Harper, James & Gray, The Law of Torts (2 Ed. 1986) 220, Section 27.12; see, also, Prosser & Keeton, Law of Torts (5 Ed. 1984) 422-424, Section 61; Annotation (1964), 95 A.L.R. 2d 992. In essence, the "public invitee" standard rejects the requirement that some type of benefit must be conferred on the owner or occupier before a visitor can be considered an invitee. See *Scheibel, supra; Light, supra.*

The Restatement's definition of "public invitee" has never been adopted by this court. The only reference ever made to it was in *Holdshoe* v. *Whinery* (1968), 14 Ohio St. 2d 134, 136-137, 43 O.O. 2d 240, 242, 237 N.E. 2d 127, 129, where this court cited the Restatement in discussing the plaintiff's status at a recreational area where she paid for the use of the facilities (namely, a picnic table).

Even if we were persuaded to adopt the Restatement's definition of "public invitee," the Provenchers would not prevail in this case. We note that Comment *d* to Section 332(2) of the Restatement of the Law 2d, *supra,* states in pertinent part that:

"It is not enough, to hold land open to the public, that the public at large, or any considerable number of persons, are permitted to enter at will upon the land for their own purposes.

---

"invitee" as "one who is on the owner's premises for a purpose mutually beneficial to both parties * * * [where] the visit may reasonably be said to confer or anticipate a business, commercial, monetary, or other tangible benefit to the occupant"); *Tanari* v. *School Directors of Dist. No. 502* (1977), 69 Ill. 2d 630, 637-638, 373 N.E. 2d 5, 8 ("[i]n determining whether or not a person is an invitee or a licensee in a given situation, appellate courts in this State have often looked at the surrounding circumstances to determine whether, as between the visitor and the owner, there was a 'mutuality of interest in the subject to which the visitor's business relates' (*Jones* v. *20 North Wacker Drive Building Corp.* (1947), 332 Ill. App. 382, 385), 'a mutually beneficial interest' (*Augsburger* v. *Singer* (1968), 103 Ill. App. 2d 12, 15; *Drews* v. *Mason* (1961), 29 Ill. App. 2d 269), a 'mutuality of interest' (*Olsen* v. *Chicago Dock & Canal Co.* (1972), 5 Ill. App. 3d 1105, 1108), a 'mutuality of benefit or a benefit to the owner' (*Madrazo* v. *Michaels* (1971), 1 Ill. App. 3d 583, 587), or whether the visitor had come to 'transact business in which he and the owner have a mutual interest or to promote some real or fancied material, financial, or economic interest of the owner' (*Trout* v. *Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87)"); *Gerchberg* v. *Loney* (1978), 223 Kan. 446, 449, 576 P. 2d 593, 596 ("[a]n invitee is one who enters or remains on the premises of another at the express or implied invitation of the possessor of the premises for the benefit of the inviter, or for the mutual benefit and advantage of both inviter and invitee"); *Zuther* v. *Schild* (1978), 224 Kan. 528, 529, 581 P. 2d 385, 386-387 ("[t]he benefit necessary to convert a licensee to an invitee is ordinarily a business, economic, pecuniary or commercial benefit"); *Britt* v. *Allen Cty. Community Jr. College* (1982), 230 Kan. 502, 638 P. 2d 914, paragraph four of the syllabus ("[o]ne entering premises on invitation does not enjoy the status of an invitee unless the entry is made in connection with the business or purposes of the owner").

As in other instances of invitation, there must be some inducement or encouragement to enter, some conduct indicating that the premises are provided and intended for public entry and use, and that the public will not merely be tolerated, but is expected and desired to come." *Id.* at 178-179.

Furthermore, Comment *b* to Section 332 of the Restatement of the Law 2d, *supra,* states: "Although invitation does not in itself establish the status of an invitee, it is essential to it. An invitation differs from mere permission in this: an invitation is conduct which justifies others in believing that the possessor desires them to enter the land; permission is conduct justifying others in believing that the possessor is willing that they shall enter if they desire to do so. * * * Mere permission, as distinguished from invitation, is sufficient to make the visitor a licensee, as stated in § 330; but it does not make him an invitee, even where his purpose in entering concerns the business of the possessor." *Id.* at 176-177.

In the case at bar, there is no indication that ODOT induced or encouraged members of the public to use its roadside rest area. Further, there is no reference to any tourist hospitality facilities, or restaurant or concession facilities at this rest stop, or in fact at most rest stops in Ohio, which may present another status issue between the state and the visitor to such a facility. Moreover, there are no allegations to the effect that visitors to the rest area in this case, or any other rest area, are in any manner enticed to use the facilities. Instead, visitors are merely informed that such facilities are available for the rest and relief of motorists.

The court of appeals distinguished this case from *Light* v. *Ohio University, supra,* in that the land in the present case was held open to the traveling public, which would inure to the benefit of all the public including the state. We disagree. The *Light* court found that "Ohio University consented to the use of its property, by the public, for the pleasure of those making use of the facility." *Id.* at 68, 28 OBR at 167, 502 N.E. 2d at 614. Furthermore, the university assumed the cost of operating the center and no fees were charged except optional rental of the lockers. Based on those facts the court concluded that the claimant used the center as a licensee. *Id.* at 68, 28 OBR at 168, 502 N.E. 2d at 614. Similarly, in the case at bar, the rest area was held open to the public and any benefit received in the use of the premises went to Mrs. Provencher.

The court of appeals misconstrued *Light* in that the issue of the injured party's legal status was not determined by what purpose the land was held open for, but rather the benefit received by the party. Moreover, this court in *Light* could have adopted and applied the public invitee standard which the court of appeals invoked below, but we chose not to do so. Instead, we discussed the injured party's status as either a business invitee or licensee. *Id.* at 68, 28 OBR at 167, 502 N.E. 2d at 613.

Thus, we find that individuals who use public roadside rest area facilities and do not provide tangible benefits to such facilities are licensees for purposes of establishing the duty of care owed by the state or its agencies. Therefore, in construing the facts in this case we hold that Mrs. Provencher was a licensee and ODOT owed her a duty to refrain from wantonly or willfully causing her injury.

For the foregoing reasons, the judgment of the court of appeals is reversed.

*Judgment reversed.*

MOYER, C.J., SWEENEY, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.