DECISION AND JUDGMENT ENTRY
This case is before us on appeal from the Lucas County Court of Common Pleas, which granted a motion for summary judgment filed by appellee Central Trux Parts, Inc. For the reasons that follow, we find that the judgment must be affirmed.
On or about July 30, 1997, Carroll Turner was injured when he fell into a grease pit at appellee's establishment, Central Trux Parts, Inc. ("Central Trux"), located on Central Avenue in Lucas County, Ohio. Central Trux is a business that sells used truck parts, and it also has a garage with four bays where it fixes trucks that it owns. Also, Central Trux, at least occasionally, rents out truck bays for its customers' use. Each bay has an overhead door on both the north and south sides of the bay. In addition, there is an access door to the garage area that is marked "Employees Only." There is record evidence that the garage, itself, was not open to the public; rather, the general public was invited only to enter the office, which is located immediately next to the garage. The office had its own entry.
According to the evidence, on or about July 30, 1997, Carroll Turner entered the garage through the access door marked "Employees Only" and approached Todd Connor, who had rented one of the bays to work on his truck. Turner asked Connor if Central Trux had any barrels for sale. Connor, who was not an employee but who was nonetheless on his way to answer the phone when Turner arrived, told Turner that he did not think that Central Trux sold barrels, but that he would need to speak with another man, Leo Krispin, the brother-in-law of the owner. Connor testified that he instructed Turner that he should exit the garage, walk outside to the last overhead door, walk through the last overhead door and then straight back to where Krispin was sitting at a desk. Ricky Lee Sisson was also present when Turner entered the garage. He initially testified that he thought Connor told Turner to wait and that someone would come by to speak with him. However, Sisson later testified that the he simply could not remember how Connor instructed Turner and that it was "very possible" that Connor instructed Turner to exit the building in order to reach Krispin. After speaking with Turner, Connor proceeded to answer the phone, and Sisson, apparently, went back to whatever he had been doing.
Some moments later, Sisson heard a sound and Krispin saw a "flash," and upon investigation, they learned that Turner had fallen into a four foot deep grease pit under the trucks in bay number three. Nobody witnessed the accident, and nobody could testify with certainty as to how the accident happened. The pit in bay number three runs nearly the entire length of the bay. At the time of the injury, two trucks were parked nose-to-nose in bay number three straddling the pit.[1] However, the trucks did not cover a section of pit roughly four feet by three feet between the noses of the two trucks. This section of the pit was covered by a piece of plywood that served as a bridge.
Both Krispin and Sisson had traversed the plywood several times without incident. Sisson testified that when he reached the pit and saw that Turner had fallen in, he discovered that the plywood was moved three or four feet and was partially resting under one of the trucks. All testimony indicated that the plywood had not been out of place before Turner fell into the pit.
As a result of the fall, Turner, a seventy-three year old man, suffered severe injuries that have rendered him incompetent. He was unable to supply any testimony about his fall. Appellant Ruth Brown, Turner's guardian, and appellant Phyllis Turner, Turner's wife, filed the instant negligence and loss of consortium action against Central Trux. The trial court granted summary judgment in favor of Central Trux, finding that, as a matter of law, appellants could not establish negligence since they had no evidence about how the accident occurred. The trial court also held that the rule of res ipsa loquitur did not apply. Appellants appeal from this judgment, setting forth the following four assignments of error:
 "I. THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF IN NOT FINDING THAT ISSUES OF FACT EXIST AS TO THE DUTY OF DEFENDANT TO HAVE WARNED CARROLL TURNER ABOUT A LATENT DEFECT AND TO HAVE PROTECTED HIM FROM A CONCEALED DANGER
 "II. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN APPLYING AN INCORRECT STANDARD TO THE EVIDENCE REGARDING THE CAUSE OF THE ACCIDENT
 "III. THE TRIAL COURT ERRED IN FINDING THE DOCTRINE OF RES IPSA LOQUITUR IS NOT APPLICABLE TO THE FACTS OF THE JULY 30, 1997 INCIDENT INVOLVING CARROLL TURNER
 "IV. THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF IN GRANTING JUDGMENT IN FAVOR OF DEFENDANT ON THE CONSORTIUM CLAIM OF PHYLLIS M. TURNER"
Since the first three assignments of error deal with the alleged negligence of Central Trux, we shall address them together. We review the trial court's judgment granting summary judgment de novo.Conley-Slowinski v. Superior Spinning (1998), 128 Ohio App.3d 360, 363, discretionary appeal not allowed (1998), 83 Ohio St.3d 1464. A movant is entitled to summary judgment pursuant to Civ.R. 56(C) when he or she demonstrates:
 "* * * that there is no issue as to any material fact, that the moving party is entitled to judgment as a matter of law, and that reasonable minds can come to but one conclusion, and that conclusion is adverse to the non-moving party." Miller v. Bike Athletic Co. (1998), 80 Ohio St.3d 607, 617.
The elements of negligence are duty, breach of duty, and causation.Mussivand v. David (1989), 45 Ohio St.3d 314, 318. Whether one owes a duty of care to another is a question of law. Id. In premises liability cases, the duty owed to an entrant onto property depends on the entrant's status in relation to the landowner. Gladon v. Regional Transit Auth. (1996), 75 Ohio St.3d 312, 315. An invitee is one who enters the property through either express or implied permission from the landowner for a purpose that is beneficial to the landowner. Id. A landowner owes an invitee the duty of ordinary care. Provencher v. Ohio Dept. ofTransp. (1990), 49 Ohio St.3d 265, 266. However, an invitee who proceeds into an area of the premises where he has not been invited loses his status as an invitee and becomes either a licensee or a trespasser, depending on whether he goes with the landowner's consent or without it.Gladon, 75 Ohio St.3d at 315.
In contrast, a licensee is one who enters the landowner's premises with the landowner's permission or acquiescence for purposes beneficial to the licensee and not to the landowner. Provencher, 49 Ohio St.3d at 266. A landowner does not owe a licensee the duty of ordinary care; rather, the landowner only owes the licensee the duty to refrain from willfully or wantonly injuring him. Id. "Willful conduct" has been defined as conduct done with the purpose or design to injure. Gladon,75 Ohio St.3d at 319. A landowner acts "wantonly" when he or she fails to exercise any care at all to those to whom he owes a duty, and the circumstances are such that there is a great probability of harm. Id. In addition, a landowner should exercise ordinary care once he realizes that the licensee is in peril, and the landowner should not subject the licensee to hidden dangers. Hannan v. Ehrlich (1921), 102 Ohio St. 176, paragraph four of the syllabus.
Finally, a trespasser is one who enters onto property "without invitation or permission purely for his own purposes or convenience* * * ." Ard v. Frawley (1999), 135 Ohio App.3d 566, 571. The landowner's only duty to a trespasser is to refrain from willfully or wantonly injuring him. Id.
In this case, there is ample evidence that Turner was, at most, a licensee. He was not an invitee because the garage is not open to the public. In fact, the evidence showed that Turner entered through a door marked "Employees Only." Even if we were to conclude that Turner was initially an invitee, he exceeded the scope of that invitation when he walked through the garage instead of around it.[2] Once Turner exceeded the scope of his invitation, he became, at best, a licensee. See Gladon, 75 Ohio St.3d at 315.
As noted, the duty owed to a licensee is to refrain from willfully or wantonly injuring him, Provencher, 49 Ohio St.3d at 266, to exercise ordinary care once the licensee is discovered in a position of peril, and to protect the licensee from hidden dangers, Hannan, 102 Ohio St. 176, at paragraph four of the syllabus. There is simply no evidence in the record that Central Trux willfully or wantonly injured Turner. This is true even if we make the inference that appellants ask us to: that Turner stepped on the board and it flipped up, throwing him into the pit. There was evidence that Krispin and Sisson had crossed over the plywood several times and were not injured. Since the plywood was apparently safe for them, there was no evidence that would permit reasonable minds to conclude that Central Trux acted willfully or wantonly. Likewise, there is no evidence that Central Trux ever discovered Turner in a position of peril. Finally, there is no evidence that Central Trux exposed Turner to a hidden danger. The record shows that, though the plywood and the truck mostly covered the pit, it was obvious to the casual observer that there was a pit below the trucks. Moreover, there was no evidence of any previous injuries that would have put Central Trux on notice that the plywood presented a hidden danger. To the contrary, the evidence showed that Krispin and Sisson had used the plywood several times and had not fallen.
Additionally, we agree with the trial court that the rule of res ipsaloquitur does not apply. That rule applies where: (1) the injury-causing instrumentality was in the exclusive control of the landowner; and (2) the injury occurred "under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed." Hake v. The George Wiedemann Brewing Co. (1970),23 Ohio St.2d 65, 66-67. As to the first requirement, there was no evidence that the plywood was in the exclusive control of Central Trux. As to the second requirement, that the accident would not normally occur if ordinary care had been exercised, we have already held that Central Trux did not owe Turner a duty of ordinary care. Also, there are various ways that this accident could have occurred even if ordinary care had been exercised. Accordingly, the trial court was correct in refusing to apply the rule of res ipsa loquitur and in granting summary judgment to Central Trux.
Finally, since summary judgment was properly granted to Central Trux, Phyllis Turner's loss of consortium claim fails as well. See Messmorev. Monarch Machine Tool Co. (1983), 11 Ohio App.3d 67, 68-69. Therefore, the trial court properly granted summary judgment on the loss of consortium claim.
Upon consideration whereof, we find that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellants are ordered to pay the court costs of this appeal.
 __________________________ Mark L. Pietrykowski, P.J.
Peter M. Handwork, J., Melvin L. Resnick, J. CONCUR.
[1] Krispin and Connor testified that the two trucks in Bay three were facing each other, nose to nose. Only Sisson testified that the trucks were both facing one direction. This discrepancy is immaterial.
[2] Even if we accept Sisson's initial testimony that Connor told Turner to stay where he was, Turner still exceeded the scope of his invitation by walking through the garage and away from the spot where he entered.