[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Plaintiff-appellant, Michael DuPriest, appeals from the summary judgment entered by the Hamilton County Court of Common Pleas in favor of the defendants-appellees, Helping Hands Household Sales, Inc. ("Helping Hands") and the Estate of Allen Sapp ("the Estate") in a negligence action. For the following reasons, we reverse the judgment and remand the cause to the trial court for further proceedings.
The Estate arranged for Helping Hands to conduct an estate sale of the personal property located in the deceased's home. After Helping Hands and the Estate determined that the sale would be a "private sale," Helping Hands distributed invitations on behalf of the estate to antique dealers and buyers that it thought would be interested in the property contained in the estate. DuPriest, an antique dealer who had attended previous estate sales managed by Helping Hands, received the following invitation:
Private Sale
 Sat. Sun. April 24th April 25th — 6871 Ken Arbre Exceptional Smalls and Large Empire and Victorian Pieces-(near intersection of Euclid Steward R.) Both days 10 to 3.
 On April 24, 1999, at approximately 9:30 a.m., prior to the start of the estate sale, DuPriest decided to walk to the right side of the house in order to look through the dining-room window in an effort to see the items that were for sale. Overgrown shrubbery and a thicket of twigs, branches and dried leaves were in front of the dining-room window. As DuPriest approached the window by walking through the middle of the shrubbery and twigs, he fell down a window well that had been covered with wire mesh, but that was hidden from view by ivy that had grown over it, and sustained injuries to his right leg and ankle. DuPriest filed a negligence action against the defendants-appellees, and on October 8, 1999, and October 30, 1999, the trial court entered summary judgment in favor of Helping Hands and the Estate, respectively, without written decisions. This appeal followed.
In a single assignment of error, DuPriest argues that the trial court improperly granted summary judgment. Concluding that genuine issues of material fact remain concerning what duty was owed to DuPriest, we sustain the assignment of error.
Initially, we note that Helping Hands, for the purposes of summary judgment, conceded that a joint venture existed between Helping Hands and the Estate. In a joint venture, each party to the venture is liable for the negligent and tortious acts of the other committed within the scope of the joint venture.[1] For purposes of our analysis as to whether summary judgment was improperly granted in favor of Helping Hands, we assume that a joint venture existed.
To prove a negligence claim, a plaintiff must show (1) that the defendant owed a duty of reasonable care; (2) that the defendant breached its duty of care; and (3) that the plaintiff sustained injuries proximately caused by that breach.[2] In a premises-liability case, the duty of care owed by the owner or occupier of the premises depends upon the legal status of the injured party, as "Ohio adheres to the common-law classifications of invitee, licensee, and trespasser."[3]
An invitee is an individual "who rightfully come[s] upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner."[4] The rights of an invitee are not absolute but are limited by the scope of the owner's invitation.[5] If an invitee goes beyond the area that is reasonably considered to be part of the invitation, the visitor loses his invitee status and becomes either a licensee or a trespasser, depending on whether he goes there with or without the permission of the owner or occupier of the land.[6]
As there is no dispute that DuPriest would have been an invitee during the hours of the sale and while inside the house, where all of the sale items were located, the parties focus their argument on whether DuPriest exceeded the scope of his invitation when he walked to the right side of the house and made a path through the middle of a thicket of twigs and branches to peer into the dining-room window. The test for construing the scope of an invitation is objective and depends upon how a reasonable person would interpret the purpose for which the land is held open and the purpose for which the landowner wishes the visitor to enter.[7] Put simply, the issue here was whether it was reasonable for DuPriest to believe that the area on the side of the house in front of the dining-room window was open to him. Relevant considerations include the landowner or occupier's conduct, the nature of the business conducted on the premises, and the arrangement and design of the premises.[8]
DuPriest maintained that it was common practice for prospective buyers to walk around a home prior to the start of an estate sale to look into windows and to locate desired items. He introduced into evidence the affidavits of three antique collectors who regularly attended estate sales to support this assertion. Further, he testified in his deposition that upon his arrival at the estate sale there were other buyers looking through the two windows in the front of the house. Finally, there was testimony that two other people attending the sale also peered through the same window that DuPriest had attempted to look through. Fortunately, those two individuals, approaching the window from the side and not walking through the thicket of branches, realized that there was unsafe ground in front of the window and did not step on the wire mesh.
The owners of Helping Hands admitted in their depositions that some people did on occasion look into windows, but that it was not a "customary" practice and that Helping Hands did not encourage it. Further, evidence and testimony demonstrated that the yard was unkempt and that there was overgrown shrubbery in front of the windows. The owners of Helping Hands testified that they purposely did not enhance the appearance of the lawn because there were no items for sale outside, such as birdbaths, urns or patio furniture.[9] The Estate administrator testified that he did not trim the overgrowth or clear out the dead tree branches prior to the sale, as all the items for sale were located inside the house, and thus there was no reason for prospective buyers to wander around the yard. But the invitation did not specifically state that all the items for sale were located only in the house. DuPriest testified that oftentimes furniture and lawn ornaments were placed out in the yard. Further, Helping Hands was aware that people "occasionally" looked through windows at estate sales, and two other prospective buyers at the sale in this instance looked through the same window. Thus, it was possible that DuPriest could have reasonably believed that this area of the premises was held open to him, and we conclude that there remained a genuine issue of material fact. Additionally, "if the status of a visitor as an invitee depends upon whether the possessor should have known that the visitor would be led to believe that a particular part of the premises was held open to him, then that is a question of fact for the jury."[10] Because there was evidence reasonably supporting the inference that Helping Hands and the Estate should have known that DuPriest would believe that the area in front of the dining-room window was open to him, there remained a question of fact to be settled before it could be determined whether DuPriest had lost his invitee status.
Therefore, by construing the evidence in a light most favorable to DuPriest, as required under the summary-judgment standard,[11] we hold that reasonable minds could differ as to whether DuPriest had exceeded the scope of his invitation by venturing around the house and walking through the overgrown branches to peer into the dining-room window. Though evidence of the unkempt yard and overgrown shrubbery suggested that prospective buyers at the sale were not invited to the dining-room window, there was also evidence that it may have been customary practice to peer through windows, and that Helping Hands and the Estate should have known that and taken appropriate action.
In reference to the Estate, we note that a landowner has a duty to warn invitees of any dangerous conditions of which he has or should have knowledge.[12] In Ohio, the administrator of an estate "stands in the shoes" of the decedent in defending alleged tort actions.[13] If the decedent in this case created the dangerous condition by placing wire mesh over the window well, he had knowledge of the condition. If the Estate, standing in the shoes of the decedent, had actual or constructive knowledge of the condition, then it had a duty to warn invitees of the dangerous condition. Even if it is determined that DuPriest lost his invitee status when approaching the dining-room window and became a licensee or trespasser, the Estate may still have owed a duty to DuPriest. A landowner has the duty of refraining from willfully or wantonly causing injury to the trespasser or licensee.[14] As there remain genuine issues of material fact as to DuPriest's status and the duty owed to him by the Estate and Helping Hands, summary judgment was improperly granted in their favor.
Accordingly, we sustain DuPriest's assignment of error, reverse the judgment of the trial court, and remand the cause for further proceedings consistent with the law and this judgment entry.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Hildebrandt and Winkler, JJ.
[1] See Clifton v. Van Dresser Corp. (1991), 73 Ohio App.3d 202,596 N.E.2d 1075.
[2] See Strother v. Hutchison (1981), 67 Ohio St.2d 282,423 N.E.2d 467.
[3] Gladon v. Greater Cleveland Regional Transit Auth. (1996),75 Ohio St.3d 312, 315, 662 N.E.2d 287, citing Shump v. FirstContinental-Robinwood Assoc. (1994), 71 Ohio St.3d 414, 417,644 N.E.2d 291.
[4] Provencher v. Ohio Depart. of Transp. (1990), 49 Ohio St.3d 265,266, 551 N.E.2d 1257, 1258.
[5] See Gladon, 75 Ohio St.3d at 315, 66 N.E.2d at 291.
[6] See id.; Restatement of the Law 2d, Torts (1965), 181-182, Section 332, Comment l.
[7] See Conniff v. Waterland, Inc. (Mar. 10, 1997), Geauga App. No. 96-G-1975, unreported.
[8] See id.
[9] DuPriest testified that one of the reasons he went walking around the house was to see if there was any outdoor furniture or ornaments for sale.
[10] See Restatement of the Law 2d, Torts (1965), 182, Section 332, Comment l.
[11] See State ex rel. Howard v. Ferreri (1994), 70 Ohio St.3d 587,589, 639 N.E.2d 1189, 1192.
[12] See Stinespring v. Natorp Garden Stores, Inc. (1998),127 Ohio App.3d 213, 711 N.E.2d 1104.
[13] See Baker v. McKnight (1983), 4 Ohio St.3d 125, 128, 447 N.E.2d 104,107.
[14] See Provencher, supra.