OPINION
{¶ 1} These consolidated appeals constitute cross-appeals from the same judgment and timely come for consideration upon the record in the trial court, the parties' briefs, and their oral arguments before this court. Plaintiffs-Appellants/Cross-Appellees, Ronald and Donna Mascarella, appeal the decision of the Mahoning County Court of Common Pleas that granted a new trial to Defendant-Appellee/Cross-Appellant, DeBartolo Capital Partnership, on damages. DeBartolo appeals the trial court's decision denying its motions for a directed verdict and JNOV.
 {¶ 2} The trial court erred when it denied DeBartolo's motions for a directed verdict and JNOV because the Mascarellas failed to demonstrate that DeBartolo owed Ronald a duty. The Mascarellas failed to introduce any evidence showing that DeBartolo should have reasonably expected that Ronald would have been walking on the canopy while he was installing the sign. This conclusion renders all the other issues raised by the parties moot. For these reasons, the trial court's decision is reversed and judgment is rendered for DeBartolo.
 Facts {¶ 3} J.C. Penney's is a retail store located in the Southern Park Mall in Boardman, Ohio. The mall is owned by DeBartolo. There are canopies above the entrances on the east and west side of the building and DeBartolo is in charge of maintenance of those canopies.
 {¶ 4} J.C. Penney's was having problems with one of its signs. Eventually, Ronald's employer, the Peskin Sign Company, was hired to replace the sign. Ronald was the journeyman in charge of the installation. Ronald determined that he would need to use the top of the canopy to install the sign. He had not previously used this canopy to install a sign, but had previously used a canopy when installing a sign above a different store in that mall. He had also used canopies when installing signs at other locations.
 {¶ 5} On January 17, 2001, Ronald was standing on top of the canopy during the sign installation when it gave way beneath him and he fell into the canopy, thereby injuring his back. On January 13, 2003, the Mascarellas filed a complaint against DeBartolo, J.C. Penney's, and the company who constructed the canopy. The trial court granted summary judgment to the construction company on February 9, 2005. The case was then tried to a jury in June 2005. After the Mascarellas presented their *Page 2 
evidence, the trial court granted J.C. Penney's motion for a directed verdict. The trial court denied DeBartolo's motion for a directed verdict both after the Mascarellas rested and after DeBartolo rested. The jury rendered a verdict in the amount of $835,000.00 to the Mascarellas, which was journalized on June 20, 2005.
 {¶ 6} On June 30, 2005, DeBartolo moved for judgment notwithstanding the verdict, a new trial, or remittitur and the Mascarellas responded on July 21, 2005. On February 23, 2006, the trial court found that the jury's verdict was "excessive, but not influenced by passion or prejudice," and ordered that the matter be set for a new trial on damages. In a March 20, 2006, entry, the trial court clarified that it was overruling DeBartolo's motion for JNOV and offered the Mascarellas a remittitur in the amount of $100,000.00. The Mascarellas refused this remittitur and appealed. DeBartolo then filed a cross-notice of appeal. On October 17, 2006, we concluded that the order being appealed was a final, appealable order.
 {¶ 7} On appeal, both the Mascarellas and DeBartolo have raised two assignments of error. We will address Debartolo's first assignment of error first, since it is dispositive of the issues in this appeal.
 JNOV {¶ 8} In its first assignment of error, DeBartolo argues:
 {¶ 9} "The trial court erred when it denied DeBartolo's motion for a directed verdict and motion for judgment notwithstanding the verdict."
 {¶ 10} According to DeBartolo, the Mascarellas did not demonstrate that DeBartolo acted negligently since they did not show that DeBartolo could have reasonably expected that anyone would use the canopy over the J.C. Penney's doors as a platform for working on the sign above.
 {¶ 11} Motions for directed verdict and JNOV employ the same standard.Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275. A trial court must grant a motion for directed verdict or JNOV if "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." *Page 3 
Civ.R. 50(A)(4). When making this decision, the court does not weigh the evidence or evaluate the credibility of the witnesses. Malone v.Courtyard by Marriott, 74 Ohio St.3d 440, 445, 1996-Ohio-0311. "Rather, the court is confronted solely with a question of law: Was there sufficient material evidence presented at trial on this issue to create a factual question for the jury?" Id. This court reviews the trial court's decision de novo. Jelinek v. Abbott Laboratories,164 Ohio App.3d 607, 2005-Ohio-5696, at ¶ 35.
 {¶ 12} In this case, the Mascarellas sued DeBartolo for negligence. To sustain a claim of negligence, a plaintiff must show a duty owed by defendant to a plaintiff, a breach of that duty, injury or damages, and the existence of proximate cause between the breach and the injury or damages. Menifee v. Ohio Welding Prod., Inc. (1984), 15 Ohio St.3d 75,77. DeBartolo's argument is that the Mascarellas failed to prove that it owed Ronald a duty. The existence of a duty is a question of law.Mussivand v. David (1989), 45 Ohio St.3d 314, 318.
 {¶ 13} As a general rule, a landowner owes some duty to people on their property, but the exact nature of the duty owed to an individual depends on the status of the individual as an invitee, licensee, or trespasser on the property. Railroad Co. v. Harvey (1907),77 Ohio St. 235, 240. An invitee is one who enters the premises of another by invitation for some purpose that is beneficial to the owner or occupier.Gladon v. Greater Cleveland Regional Transit Auth., 75 Ohio St.3d 312,315, 1996-Ohio-0137. A licensee is one who enters property with the owner or occupier's permission or acquiescence for purposes beneficial to the licensee and not the owner or occupier. Provencher v. Ohio Dept.of Transp. (1990), 49 Ohio St.3d 265, 266. A trespasser is one who enters property without invitation or permission, purely for his or her own purposes or convenience. McKinney v. Hartz Restle Realtors,Inc. (1987), 31 Ohio St.3d 244, 246.
 {¶ 14} Ronald was clearly a business invitee since he was on the property by the invitation of the occupier of the premises for a purpose beneficial to the occupier of the premises. A landowner "ordinarily owes its business invitees a duty of ordinary care in maintaining the premises in a reasonably safe condition and has the duty to *Page 4 
warn its invitees of latent or hidden dangers." Armstrong v. Best BuyCo., Inc., 99 Ohio St.3d 79, 2003-Ohio-2573, at ¶ 5. This is so property owners do not unreasonably expose invitees to danger. The J.C. PenneyCo., Inc. v. Robison (1934), 128 Ohio St. 626, paragraph one of the syllabus.
 {¶ 15} "[T]he obligation of reasonable care is a full one, applicable in all respects, and extending to everything that threatens the invitee with an unreasonable risk of harm. The occupier must not only use care not to injure the visitor by negligent activities, and warn him of latent dangers of which the occupier knows, but he must also inspect the premises to discover possible dangerous conditions of which he does not know, and take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement or use." Perry v.Eastgreen Realty Co. (1978), 53 Ohio St.2d 51, 52.
 {¶ 16} In this case, DeBartolo contends that it had no duty to ensure that it was reasonably safe for Ronald to use the canopy when changing the sign because it did not reasonably expect that the sign company would use the canopy when accomplishing that task. The Mascarellas contend that DeBartolo's duty was to keep the premises reasonably safe and that DeBartolo's expectations are unimportant if the procedure used by Ronald was the only way of completing the task.
 {¶ 17} Caselaw provides that a property owner's duty is to ensure that the property is "in a reasonably safe condition for use in a manner consistent with the purpose of the invitation." Drexler v. Labay (1951),155 Ohio St. 244, 251. Furthermore, cases have held that the property owner's duty only extends to where the invitee would be reasonably expected to go. Conver v. EHK Co., 10th Dist. No. 02AP-1307, 2003-Ohio-5033, at ¶ 25. As the Ohio Supreme Court has said, the responsible party only has to ensure that the property is safe for "the general uses which it should be reasonably be expected would be made of it," not "for all possible emergencies." Board of Com'rs of HardinCounty v. Coffman (1899), 60 Ohio St. 527, 532.
 {¶ 18} When applying these principles, courts have looked to determine whether the use which caused the hazard could have reasonably been expected by *Page 5 
the land owner. For example, in Conver a woman who was part of a bachelorette party was using an ATM at a bank. The area around the ATM was illuminated and in working condition. The woman ventured into unlit areas around the bank in order to relieve herself and fell to her death in a stairwell about twenty-five yards from the ATM. The Tenth District concluded that she was an invitee for the purpose of obtaining money from the ATM, even after normal banking hours. "However, she exceeded the scope of that invitation and became a licensee when she ventured off into the dark in order to relieve herself." Id. at ¶ 25. Since the woman "was not injured while going to the ATM, using it or returning from the ATM" the bank owed her no duty. Id.
 {¶ 19} In Kucera v. Grigsby (1927), 24 Ohio App. 457, the plaintiff was an independent contractor hired to repair a gutter on the defendant's home. Rather than using a ladder to reach the gutter, the plaintiff clutched at a window frame to balance himself. The window frame broke, causing the plaintiff to fall and injure himself. The appellate court affirmed a directed verdict for the defendant because a property owner had no duty to protect the plaintiff from the hazards inherent in "unusual and unexpected uses of his property." Id. at 459.
 {¶ 20} The question then is whether the evidence, when construed in the light most strongly in favor of the Mascarellas, shows that DeBartolo reasonably expected that Ronald would use the canopy when replacing the sign. At trial, no one who was employed by the mall testified about what they may have reasonably expected. Instead, the sole testimony from someone who worked at the mall on the day in question was from William Bullis, J.C. Penney's store manager. He testified that he had never seen anyone on the canopy, that he did not give the sign company permission to use the canopy, that he had no reason to believe the sign company would use the canopy, and that no one from J.C. Penney's told mall management that the sign company would use the canopy.
 {¶ 21} Ronald testified that he had used a canopy when installing a sign over a different store at that mall in the past. However, Ronald did not know whether anyone had given mall management notice that he would use the canopy to accomplish that *Page 6 
task. He also testified that he had used canopies when installing signs at other locations. According to Ronald, it was an accepted and commonplace practice that people in the sign installation business would occasionally use canopies when installing signs.
 {¶ 22} Ronald testified that he did not talk to anyone in mall management to obtain permission to use the canopy. This was echoed by his boss, Gerald Peskin, who said that "permission wasn't sought" from either J. C. Penney's or DeBartolo.
 {¶ 23} Ronald further testified that mall security stopped to inquire into what he was doing. He told them what he intended to do and they never told him to stay off the canopy. However, the current mall manager testified that mall security was operated by an independent contractor, who would not have known who was responsible for the sign or canopy.
 {¶ 24} Finally, the Mascarellas argue that there were roofing materials on top of the canopy at the time of Ronald's injury and that the presence of these materials shows that DeBartolo should have reasonably expected that someone would be walking on top of the canopy. But this argument falls into the trap rejected by the Ohio Supreme Court in Coffman. The fact that roofers may have walked on the top of the canopy does not mean that DeBartolo should expect that anyone else will be on top of that canopy. The Mascarellas cannot show that DeBartolo should have reasonably expected that Ronald would be walking on the canopy by demonstrating that someone else, performing a different job, had been on the canopy.
 {¶ 25} The Mascarellas have no direct evidence that DeBartolo should have reasonably expected that the sign company would use a canopy that day to install the sign. Instead, they can only point to the fact that Ronald had done so at this mall in the past and that this was not uncommon in his industry. There is no proof that DeBartolo knew that the sign company had used the canopy in the past. Furthermore, there is no evidence that DeBartolo knew of the accepted and commonplace practice in the sign installation industry to use canopies when installing signs.
 {¶ 26} If the Mascarellas had introduced some evidence showing that mall management was aware either that sign companies had used canopies at the mall in *Page 7 
the past when installing signs or that sign companies commonly used canopies when installing signs, then the matter would properly be an issue for the jury. However, without this kind of evidence, there is no way to show that DeBartolo should have reasonably expected that Ronald would be exposed to danger by walking on top of the canopy. Thus, the Mascarellas have failed to demonstrate that DeBartolo owed Ronald a duty to ensure that the canopy was in a reasonably safe condition for him to walk upon and the trial court should have granted DeBartolo's motion for judgment notwithstanding the verdict. DeBartolo's first assignment of error is meritorious.
 Moot Assignments of Error {¶ 27} The Mascarellas argue the following two assignments of error on appeal:
 {¶ 28} "The trial court abused its discretion in ordering the jury's $835,000.00 verdict remitted to $100,000.00 and/or new trial on the issue of damages where the court evinced nothing in support of remittitur other than its subjective disagreement with the size of the verdict."
 {¶ 29} "The trial court abused its discretion in ordering the jury's $835,000.00 verdict remitted to $100,000.00 and/or new trial on the issue of damages where the manifest weight of the evidence supported the jury's $835,000.00 verdict."
 {¶ 30} DeBartolo's remaining assignment of error argue:
 {¶ 31} "The trial court abused its discretion when it denied DeBartolo's motion for a new trial under Ohio Civil Rule 59(A) because the jury's verdict was not sustained by the weight of the evidence."
 {¶ 32} The issues raised in these assignments of error are all moot in light of our resolution of DeBartolo's first assignment of error. Accordingly, we will not address the merits of those assignments of error in this appeal.
 Conclusion {¶ 33} In conclusion, the trial court erred when it denied DeBartolo's motions for a directed verdict and JNOV. The Mascarellas failed to introduce any evidence showing that DeBartolo should have reasonably expected that Ronald would have been walking on the canopy while he was installing the sign. This conclusion renders all the other assignments of error moot. Accordingly, the judgment of the trial court is *Page 8 
reversed and judgment is rendered for DeBartolo.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1