NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0420n.06

No. 22-3256

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Oct 20, 2022
DEBORAH S. HUNT, Clerk

LOIS HARMON, et al.,           )
                             )
     Plaintiffs-Appellants,     )
                             )
v.                              )
                             )
DOLGEN MIDWEST, LLC, doing business as )
Dollar General; BOTTLING GROUP, LLC, )
                             )
     Defendants-Appellees.     )
                             )

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE NORTHERN
DISTRICT OF OHIO

OPINION

Before: MOORE, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Lois Harmon tripped and fell while shopping at a Dollar General store in Akron, Ohio. She believes that a sticky residue on the store floor left over from a Pepsi product spill earlier that day caused her fall. Harmon and her late husband Charles Harmon sued Dollar General and Bottling Group seeking damages based on a theory of premises liability and negligence under Ohio law. The district court granted defendants' motions for summary judgment. We AFFIRM.

I.

While stocking a cooler at a Dollar General store, Jacob Santucci, a merchandiser for Bottling Group, LLC, spilled a 20-ounce bottle of pop on the floor in front of the Pepsi product cooler. Santucci promptly notified a Dollar General employee of the spill, mopped up the liquid, and placed a caution sign where the spill occurred. Before leaving the store, Santucci checked back to make sure the floor was no longer wet or sticky.

A few hours later, Harmon arrived at the Dollar General store to purchase milk. As she walked down the aisle leading to the milk cooler, Harmon felt her right foot get stuck, causing her to lose her balance and fall headfirst into the cooler. She suffered serious physical and emotional injuries as a result of the fall.

Paula Billinovich, Assistant Manager of the Dollar General store, testified that she did not see Harmon fall, but heard her yell from a few aisles over. Billinovich quickly came over and found Harmon already sitting up, with two customers attending to her. Billinovich retrieved some paper towels to apply to her head wound. Billinovich did not notice any sticky substance or other hazard on the floor in the area where she found Harmon.

Later that day, Harmon's son, Steven, returned to the Dollar General store to investigate the scene of his mother's fall. He took some photographs of the scene and had a short conversation with Billinovich, who told him there had been a Pepsi spill at the store earlier that day.

Harmon and her husband[1] sued Dollar General Corporation and PepsiCo., Inc. in the Summit County Court of Common Pleas. Defendants removed the case to federal court based on diversity jurisdiction pursuant to 28 U.S.C. § 1441(a). In subsequent amended complaints, plaintiffs named DolGen Midwest, LLC, doing business as Dollar General, as a defendant and substituted Bottling Group, LLC for PepsiCo. The district court granted defendants' motions for summary judgment. Harmon appealed.

Pursuant to 28 U.S.C. § 1653, this court requested supplemental briefing to confirm that it had subject matter jurisdiction over this case. Now satisfied that complete diversity exists and that the amount-in-controversy minimum is met, we address the merits.

---

[1] Harmon's husband passed away on March 17, 2021.

II.

We review the district court's summary judgment decision de novo. *Franklin Am. Mortg. Co. v. Univ. Nat'l Bank of Lawrence*, 910 F.3d 270, 275 (6th Cir. 2018). "[S]ummary judgment is warranted only if 'there is no genuine issue as to any material fact' and 'the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P. 56(a) and *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013)).

The parties agree that Ohio law governs this diversity action. Under Ohio law, businesses have a duty to maintain their premises in a reasonably safe condition. *Provencher v. Ohio Dep't of Transp.*, 551 N.E.2d 1257, 1258 (Ohio 1990). To prevail on a slip-and-fall claim, a business invitee must establish one of the following:

(1) That the defendant through its officers or employees was responsible for the hazard complained of; or
(2) That at least one of such persons had actual knowledge of the hazard and neglected to give adequate notice of its presence or remove it promptly; or
(3) That such danger had existed for a sufficient length of time reasonably to justify the inference that the failure to warn against it or remove it was attributable to a want of ordinary care.

*Beard v. Kroger Co.*, 133 F. App'x 174, 175–76 (6th Cir. 2005) (quoting *Combs v. First Nat'l Supermarkets, Inc.*, 663 N.E.2d 669, 670 (Ohio Ct. App. 1995)). An independent contractor like Bottling Group owes a general duty of care towards an invitee, exercising that degree of care which an ordinarily careful and prudent person would exercise under the same or similar circumstances. *See Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992).

Harmon alleges that Santucci's spill caused her fall. But the evidence does not support her claim. The record is clear that Santucci's spill happened in a different part of the store than where Harmon tripped. At her deposition, Harmon identified in a photograph the spot on the floor where her foot got stuck: near the end of the aisle leading to the milk cooler, before the Natural Light

display. Santucci was shown the same photograph but testified that his spill did not occur in the same area where Harmon tripped. Rather, he said the spill happened in a different aisle, running perpendicular to the one in which Harmon tripped, in front of a different cooler, in an area to the right of the section of the store visible in the photograph. And he confirmed that there was no way the spill could have traveled to the area where Harmon tripped because "it wasn't that big of a spill."

There is no evidence in the record establishing that Harmon tripped in the part of the store where Santucci spilled the beverage. Santucci is the only person who knows exactly where the Pepsi spill occurred, and his testimony is the only evidence in the record concerning the precise location of the spill. Similarly, Harmon is the only person who knows exactly where her foot got stuck when she tripped, and her testimony is the only evidence in the record concerning the precise location of her trip. Because the sworn location of the spill and the sworn location of the trip are different, no reasonable juror could find for Harmon based on this record. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Harmon disputes this conclusion, claiming that a statement made by Billinovich raises a genuine issue of material fact. Harmon's son testified that Billinovich told him that the floor was "still sticky" from the earlier Pepsi spill, in response to his question about the cause of Harmon's fall. Billinovich disputes this account of the conversation; but assuming that Harmon's version is accurate, the statement is not enough to create a jury submissible issue. Billinovich had no personal knowledge of whether the floor where the Pepsi spill occurred was still sticky when Harmon entered the store. Billinovich was not at the store when the spill happened, and her uncontroverted testimony is that at "no point" did she ever "go over . . . to independently check on how the floor felt where the spill occurred." And even if the floor *was* still sticky, it is undisputed

that Billinovich did not know precisely where the Pepsi spill happened or where Harmon tripped. Only Santucci and Harmon knew, and their testimony establishes that the location of the spill and the location of the trip were different. Secondhand speculation about the cause of a fall by someone who lacks personal knowledge of both the cause and the location of the fall is not enough, on its own, to preclude summary judgment. *See Gon v. Dick Clark's Am. Bandstand & Grill*, No. 96APE07-910, 1996 WL 785533, at *5 (Ohio Ct. App. Feb. 11, 1996); *Stamper v. Middletown Hosp. Ass'n.*, 582 N.E.2d 1040, 1042–43 (Ohio Ct. App. 1989). Billinovich's alleged comments to Harmon's son therefore create no genuine issue of material fact.

Harmon offers no other possible explanation for her fall. A slip-and-fall plaintiff cannot recover if she does not know what caused her to slip and fall. *See, e.g.*, *Smith v. Resch's Bakery*, No. 87 AP-897, 1987 WL 27806, at *2 (Ohio Ct. App. Dec. 10, 1987) (citing *Cleveland Athletic Assoc. Co. v. Bending*, 194 N.E. 6 (Ohio 1934)); *Guyton v. Debartolo, Inc.*, No. 65268, 1993 WL 453671, at *1 (Ohio Ct. App. Nov. 4, 1993). Harmon testified that at the time of her fall she did not see anything spilled on the floor and did not know what sticky substance caused her to fall or how it got there. And under Ohio law, "[t]he mere fact that a customer slips and falls on the floor of a business establishment does not, standing alone, create an inference that the floor was unsafe." *Eller v. Wendy's Int'l, Inc.*, 755 N.E.2d 906, 916 (Ohio Ct. App. 2000) (citing *J.C. Penny Co. v. Robison*, 193 N.E. 401, syllabus paragraph four (Ohio 1934)).

Harmon points to several pieces of evidence she believes the district court improperly disregarded. But this evidence fails to create a genuine issue of material fact because it does not establish that defendants were responsible for the alleged sticky substance that Harmon believes she tripped on. For instance, Harmon faults the district court for failing to appreciate that Santucci could not initially remember whether his spill occurred near the milk cooler. But that does not

change the fact that Santucci was able to identify with certainty the location of his spill once presented with a photograph of the store aisle. Harmon also objects to the fact that the district court "found as true" Santucci's testimony that he thoroughly cleaned up his spill while ignoring the evidence that "employees, like Santucci," were known for not cleaning their spills properly. But again, this evidence is of no help in establishing that the allegedly leftover spill was where Harmon tripped. *See Gon*, 1996 WL 785533, at *4. Plaintiffs also note a dispute about how many caution signs, if any, were present near the area where Harmon tripped at the time she fell. But this is also not a material fact because regardless of whether there was one sign, three signs, or no signs at all, there is not enough evidence to establish the spill caused Harmon's fall. The district court did not err by awarding summary judgment to defendants.

\* \* \*

We AFFIRM.