OPINION
{¶ 1} Grace E. Quinn appeals from a judgment of the Montgomery County Court of Common Pleas, which granted the motions of the Montgomery County Educational Service Center ("ESC") and the City of Dayton for summary judgment.
 {¶ 2} The facts underlying this action are not in dispute.
 {¶ 3} At approximately 10:00 a.m. on September 21, 2002, Grace and John Quinn were walking home after visiting their granddaughter's home. The homes are a little more than a mile apart. On the day in question, the Quinns decided to walk home via Arcadia Boulevard. The Grant Learning Center is located at 4309 Arcadia Boulevard in Dayton, Ohio, and is owned by the Dayton Board of Education. ESC leases the facility from the Board of Education. While passing in front of the Grant Learning Center on the public sidewalk, Mrs. Quinn tripped and fell on a portion of the sidewalk that was severely deteriorated. Mrs. Quinn's left wrist and forearm were injured by the fall.
 {¶ 4} On April 7, 2003, the Quinns brought suit against ESC, alleging that ESC (1) had a duty under R.C. 2744.02(B)(3) to maintain the sidewalk free from nuisance, (2) had negligently failed to maintain the sidewalk, (3) had negligently failed to repair the deteriorated portions of the sidewalk, and (4) had negligently failed to warn of the dangerous condition. ESC has asserted that neither ESC nor the Board of Education was responsible for the public sidewalk abutting the property. ESC has maintained that the City of Dayton had sole responsibility for the upkeep of that sidewalk. On October 30, 2003, ESC filed a motion for summary judgment. ESC argued that it did not owe the Quinns a duty under R.C.2744.02(B)(3) because it was not responsible for the public sidewalk abutting the property, that the Quinns were licensees rather than invitees, and that the alleged defective condition was an open and obvious danger. In November 2003, the Quinns moved to stay a ruling on ESC's motion and to join the City of Dayton as a defendant. The trial court granted the Quinns' motion.
 {¶ 5} After ESC's motion had been fully briefed, the trial court sustained ESC's motion for summary judgment. In its June 11, 2004, ruling, the court identified four issues: (1) whether ESC is a political subdivision that is immune from liability; (2) whether ESC was the owner or merely the lessee of the property abutting the public sidewalk; (3) whether the Quinns were licensees or invitees; and (4) whether the condition of the sidewalk was open and obvious. The court assumed, arguendo, that ESC was not entitled to immunity and that it was the owner of the property. It concluded, however, that the Quinns had used the sidewalk as licensees, to which property owners owe no duty except to refrain from willful, wanton or reckless conduct. Finding that the Quinns had failed to show any evidence of willful, wanton or reckless conduct, the court granted ESC's motion for summary judgment.
 {¶ 6} On June 24, 2004, the City of Dayton also filed a motion for summary judgment, in which it incorporated by reference ESC's motion. For the reasons set forth in its June 11 decision, the court granted the City's motion as well. The Quinns have filed a timely appeal of both rulings.
 {¶ 7} The Quinns raise one assignment of error on appeal.
 {¶ 8} "The trial court erred in sustaining defendant-appellees' motions for summary judgment in that plaintiff-appellant, as a pedestrian lawfully on a public sidewalk, was an implied and/or public invitee rather than a licensee."
 {¶ 9} In their assignment of error, the Quinns claim that the trial court erred, as a matter of law, when it concluded that Mrs. Quinn had been a licensee. They argue R.C. 2744.02(B)(3) specifically addresses the liability of political subdivisions with regard to public sidewalks, and that the statute imposes liability irrespective of the passerby's status as a licensee, invitee, or trespasser. The Quinns further argue that they were public invitees to which ESC and the City of Dayton owed a duty of ordinary care.
 {¶ 10} We begin our analysis with whether the Quinns were licensees or invitees when they were using the public sidewalk.
 {¶ 11} "In Ohio, the status of the person who enters upon the land of another (i.e., trespasser, licensee, or invitee) continues to define the scope of the legal duty that the landowner owes the entrant." Gladon v.Greater Cleveland Regional Transit Auth. (1996), 75 Ohio St.3d 312, 315,662 N.E.2d 287. "Invitees are persons who rightfully come upon the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner." Id.; McManes v. Kor Group, Montgomery App. No. 19550, 2003-Ohio-1763, at ¶ 37. With regard to invitees, a landowner has a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition in order to insure that the invitee was not unnecessarily and unreasonably exposed to danger. Paschalv. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203, 480 N.E.2d 474;Light v. Ohio Univ. (1986), 28 Ohio St.3d 66, 68, 502 N.E.2d 611; Kidderv. The Kroger Co., Montgomery App. No. 20405, 2004-Ohio-4261, at ¶ 7.
 {¶ 12} In contrast, a licensee is one who enters upon the premises of another, by permission or acquiescence and not by invitation, for his own benefit or convenience. Light, 28 Ohio St.3d at 68; Richardson v. Novak
(Nov. 3, 1993), Montgomery App. No. 13947. A property owner owes a licensee no duty except to refrain from wanton or willful conduct which is likely to injure him and to exercise ordinary care after discovering him to be in peril. Gladon, 75 Ohio St.3d at 317; Richardson, supra. Furthermore, the licensee should not be exposed to hidden dangers, pitfalls or obstructions created by the property owner's active negligence. Richardson, supra; Cunningham v. Stout (June 8, 2001), Clark App. No. 2000 CA 72. "Willful conduct `involves an intent, purpose or design to injure.' Wanton conduct occurs when one `fails to exercise any care whatsoever toward those to whom he owes a duty of care, and his failure occurs under circumstances in which there is great probability that harm will result * * *.'" McKinney v. Hartz Restle Realtors,Inc. (1987), 31 Ohio St.3d 244, 246, 510 N.E.2d 386 (citations omitted).
 {¶ 13} The Quinns argue that the trial court erred in relying upon cases which have held that a passerby on a public sidewalk is a licensee, not an invitee. They, instead, rely upon the Restatement of Law 2d, Torts (1965) § 332, which defines a public invitee as "a person who is invited to enter and remain on land as a member of the public for a purpose for which the land is held open to the public." The Quinns assert that the supreme court adopted the Restatement's concept of a public invitee in Brady v. Consolidated Rail Corp. (1988), 35 Ohio St.3d 161,519 N.E.2d 387.
 {¶ 14} We disagree. In Provencher v. Ohio Dept. of Trans.
(1990), 49 Ohio St.3d 265, 551 N.E.2d 1257, the supreme court addressed whether users of a highway rest area were public invitees. Addressing the definition of a public invitee as set forth in the Restatement, the court noted that the standard dispensed with the requirement that some type of benefit be conferred on the property's owner or occupier before a visitor could be considered an invitee. Id. at 267. The court declined to adopt the public invitee standard, stating "[t]he economic (or tangible) benefit test has long been recognized in this court in order to distinguish the status of an invitee from that of a licensee." Id. at 266. In doing so, the Provencher court explicitly stated that "the Restatement's definition of `public invitee' has never been adopted by this court." Id. at 267. The supreme court thus has required a tangible or economic benefit to the owner or occupier of the land in order for a visitor to be an invitee. See also Heffern v. Univ. of Cincinnati Hosp.
(2001), 142 Ohio App.3d 44, 52, 753 N.E.2d 951.
 {¶ 15} In the present case, the Quinns acknowledge that they were walking along a public sidewalk on their way home from their granddaughter's house. They have not claimed that they were on the sidewalk for any purpose related to ESC or that they were on the sidewalk for any purpose which was beneficial to ESC or the City of Dayton. Accordingly, the Quinns were licensees and not invitees.
 {¶ 16} The Quinns claim that R.C. 2744.02(B)(3) renders ESC and the City of Dayton liable notwithstanding their status as users of the property. R.C. 2744.02(B)(3) provides:
 {¶ 17} "Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
 {¶ 18} "(3) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property caused by their failure to keep public roads, highways, streets, avenues, alleys, sidewalks, bridges, aqueducts, viaducts, or public grounds within the political subdivisions open, in repair, and free from nuisance * * *."
 {¶ 19} Although the sidewalk abuts a property which is leased by a political subdivision, ESC and the City of Dayton do not have identical duties with respect to the sidewalk at issue. A sidewalk on a public street is presumed to be under the control of the municipality. Eichornv. Lustig's, Inc. (1954), 161, Ohio St. 11, 13, 117 N.E.2d 436; Fodor v.City of Strongsville, Cuyahoga App. No. 84287, 2004-Ohio-6021, at ¶ 19. R.C. 723.01, an analogus statute to R.C. 2744.02(B)(3), grants to a municipal corporation "special power to regulate the use of the streets." The statute further reads: "Except as provided in section 5501.49 of the Revised Code, the legislative authority of a municipal corporation shall have the care, supervision, and control of the public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts within the municipal corporation, and the municipal corporation shall cause them to be kept open, in repair, and free from nuisance." Id. Thus, the City of Dayton has a statutory duty to maintain the sidewalks within the municipality and, under both R.C. 2744.02(B)(3) and R.C. 723.01, the municipality could be held liable if a defect that caused injury amounted to a nuisance. See Stein v. City of Oakwood (May 8, 1998), Montgomery App. No. 16776.
 {¶ 20} Generally, an owner of land abutting a sidewalk is not liable for injuries to pedestrians on a sidewalk. Eichorn, supra; Pozniak v.Recknagel, Lorain App. No. 03CA8320, 2004-Ohio-1753. There are three exceptions to this rule: (1) if a statute or ordinance imposes a specific duty to keep the sidewalk abutting the property in good repair; (2) if by affirmative acts the property owner created or negligently maintained the defective or dangerous condition; or (3) the property owner negligently permitted the defective or dangerous condition to exist for some private use or benefit. Kingston v. Austin Dev. Co. (Feb. 5, 1998), Cuyahoga App. No. 72034 (citing cases). R.C. 723.011 allows municipal corporations to require, by ordinance, "that the owners and occupants of abutting lots and lands shall keep the sidewalks, curbs, and gutters in repair and free from snow or any nuisance." Id. The City of Dayton, however, has not imposed a general duty upon owners and occupiers of land to keep the sidewalks abutting the property in good repair and free from nuisance. See Dayton Municipal Code 95.17 (requiring the owner or the occupant of real property to keep the sidewalk abutting his premises free and clear of snow and ice and to remove all accumulated snow and ice within a reasonable time); Id. at 95.90 (specifying certain conditions as nuisances for streets, alleys, sidewalks, or park strips); Id. at 95.91 (requiring the abatement of nuisances listed in 95.90). Although the City has passed improvement resolutions such that individual property owners may be required to construct or repair specific sidewalks, curbs, or gutters, these resolutions do not create a general duty upon all owners or occupiers of real estate in the City to maintain and repair the sidewalks abutting their property. See Pozniak at ¶ 17-18.
 {¶ 21} We agree with ESC that R.C. 2744.02(B)(3) does not impose a duty upon that entity to repair and to maintain the public sidewalks abutting the property at issue. Although ESC acknowledges that it is a political subdivision, ESC had no duty to maintain the public sidewalks. In the absence of such a duty, it cannot be liable under R.C.2744.02(B)(3). Rather, ESC may only be liable to the extent that it breached its common law duty of care. Because the Quinns were licensees and they have not presented evidence that ESC had acted willfully or wantonly, the trial court properly granted summary judgment in favor of ESC.
 {¶ 22} Unlike ESC, the City of Dayton's potential for liability is governed by R.C. 2744.02(B)(3). The City contends that it did not breach its duty of care and thus summary judgment in its favor was proper, because the deteriorated sidewalk in front of the Grant Learning Center was an open and obvious danger.
 {¶ 23} "[A] municipal corporation does not insure against all accidents upon the streets, sidewalks, or public grounds that it has a duty to maintain." Stein, supra. The city has no duty to protect individuals against hazards on its property that are open and obvious. See id, citing Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus; Pozniak at ¶ 14 ("A city has no duty to pedestrians for open and obvious defects that ordinary, reasonable care would have detected and allowed the avoidance of the defect by the pedestrian."). "`The rationale behind the [open-and-obvious] doctrine is that the open-and-obvious nature of the hazard itself serves as a warning.' The open-and-obvious doctrine concerns the first element of negligence, whether a duty exists. Therefore, the open-and-obvious doctrine obviates any duty to warn of an obvious hazard and bars negligence claims for injuries related to the hazard." Henry v. DollarGeneral Store, Greene App. No. 2002-CA-47, 2003-Ohio-206, at ¶ 7. We have recognized, however, that there may be attendant circumstances which divert the individual's attention from that hazard and excuse her failure to observe it. Id. The particular facts and circumstances must be examined to determine whether a hazard is open and obvious. Id.
 {¶ 24} According to the record, the Quinns were walking along the public sidewalk in front of the Grant Learning Center at approximately 10:00 a.m. Mrs. Quinn testified that it was "a pleasant day" and that the sidewalk was dry. Mrs. Quinn did not recall any debris or shadows on the sidewalk. She stated that there was no traffic and that she had been looking ahead while she walked. Her husband was walking a short distance behind her. The record thus reveals no evidence of any distractions or other attendant circumstances which would have diverted Mrs. Quinn's attention from the sidewalk.
 {¶ 25} Photographs of the sidewalk indicate that the portion of sidewalk at issue was severely deteriorated with spider cracks throughout. Several cracks widened as they neared the edge. The crack at issue was approximately four to five inches across at its widest point and approximately three and one half inches deep along the center. Although Mrs. Quinn may not have focused on this particular crack as she walked across that patch of sidewalk, we find nothing in the record to suggest that she should not have been expected to see the hazard. SeeGamby v. Fallen Timbers Enters., Lucas App. No. L-03-1050, 2003-Ohio-5184. Viewing the evidence in the light most favorable to the Quinns, we find no genuine issue of material fact that the condition of the sidewalk was an open and obvious danger. Accordingly, the trial court properly granted summary judgment in favor of the City of Dayton and ESC.
 {¶ 26} The assignment of error is overruled.
 {¶ 27} The judgment of the trial court will be affirmed.
Brogan, P.J. and Donovan, J., concur.