[Cite as *Roberts v. Kauffman 4 Dayton, Ltd.*, 2022-Ohio-3164.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| ALLEN KEITH ROBERTS | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29412 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-130 |
| | : | |
| KAUFFMAN 4 DAYTON, LTD, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

· · · · · · · · · · ·

O P I N I O N

Rendered on the 9th day of September, 2022.

· · · · · · · · · · ·

ALLEN KEITH ROBERTS, 4916 Oaks Court, Middletown, Ohio 45044
        Plaintiff-Appellant, Pro Se

MOLLY G. VANCE, Atty. Reg. No. 0076494, P.O. Box 6835, Scranton, Pennsylvania
18505
        Attorney for Defendant-Appellee, Kauffman 4 Dayton, Ltd.

BRIAN L. WILDERMUTH, Atty. Reg. No. 0066303, 50 Chestnut Street, Suite 230,
Dayton, Ohio 45440
        Attorney for Defendant-Appellee, Central Miami Property Maintenance

· · · · · · · · · · · ·

TUCKER, P.J.

{¶ 1} Plaintiff-appellant Allen Keith Roberts appeals from a judgment of the Montgomery County Court of Common Pleas, which rendered summary judgment in favor of defendants-appellees Kauffman 4 Dayton, Ltd. ("Kauffman") and Central Miami Property Maintenance ("Central Miami") on Roberts's "slip and fall" negligence claim against them.   For the following reasons, the trial court's judgment will be affirmed.

## I.        Facts and Procedural History

{¶ 2} This appeal stems from injuries sustained by Roberts on January 14, 2019. On that date, Roberts arrived at the facility of his employer, Freight Rite, at his usual time of approximately 6:30 a.m.   Roberts was aware that it had snowed two days prior with approximately eight inches of snow accumulation.   After exiting his vehicle, Roberts walked across the parking lot toward the facility entrance ramp located at the end of the building.   Roberts was a few feet from the ramp when he slipped on ice and fell to the ground.   Roberts sustained multiple breaks to his right leg, which required surgery.   He also tore three ligaments and sustained nerve damage.

{¶ 3} Kauffman owns the commercial office building and parking lot leased by Freight Rite.   Central Miami is an independent contractor who provided snowplowing services to Kauffman for the Freight Rite facility following the snow event.

{¶ 4} On January 12, 2021, Roberts filed an action against Kauffman and Central Miami alleging that they had negligently failed to provide a safe means of ingress; had created or maintained an unreasonably dangerous and hazardous condition as a result of the plowing activities, which in turn had caused the naturally accumulated snow and

ice to be more dangerous than would normally be encountered; and had failed to reasonably inspect, remove, or warn him of the existence of this dangerous condition.

{¶ 5} After taking Roberts's deposition, Kauffman and Central Miami filed motions for summary judgment on Roberts's claims. Both defendants argued they had not created an unnatural accumulation of snow and ice on the property and that the danger posed by the snow and ice had been open and obvious. Roberts opposed the motion, arguing that the plowed snow was pushed to the edge of the fence line which, based upon the slope of the terrain, allowed thawed snow to seep to the parking lot area where he ultimately fell, and then the accumulated water refroze. Roberts argued that the ice patch so created had been an unnatural and negligently created ice accumulation. Roberts also asserted that the icy patch had not been open and obvious.

{¶ 6} The trial court entered summary judgment in favor of Kauffman and Central Miami. In its decision, the trial court concluded that Roberts's claims were precluded by the "no-duty winter rule" and the open and obvious doctrine.

{¶ 7} Roberts appeals.

## II. Late Filing of Reply Memorandum

{¶ 8} As written, Roberts's first assignment of error states the following:

TRAIL COURT FIRST ASSIGNMENT OF ERROR ABUSE OF DISCRETION ALLOWING FAILURE TO FILE IN TIMELY MANNER INTO THE RECORD

{¶ 9} Roberts contends that the trial court erred by permitting Central Miami to file

a reply memorandum outside of the time allowed by the trial court's final pretrial order. That order required all motions for summary judgment be filed by November 22, 2021. The order also made responses due 28 days after the movant's filing and replies due seven days after the filing of any responses.

{¶ 10} Central Miami filed its motion for summary judgment on November 12, 2021. Roberts filed his response on December 10, 2021. Prior to the expiration of the 7 day deadline for its reply, Central Miami filed a motion for an extension of time to file its reply. Although no decision was entered regarding the motion for an extension, Central Miami filed its reply on December 28, 2021. Thus, there is no dispute that the reply was not filed in the time permitted by the pretrial order.

{¶ 11} "Trial courts have inherent power to manage their own dockets and the progress of the proceedings before them." *Pond v. Pond*, 10th Dist. Franklin No. 20AP-262, 2021-Ohio-1708, ¶ 9, quoting *U.S. Bank Natl. Assn. v. Lewis*, 10th Dist. Franklin No. 18AP-550, 2019-Ohio-3014, ¶ 10, citing *Canady v. Rekau & Rekau, Inc.*, 10th Dist. Franklin No. 09AP-32, 2009-Ohio-4974, ¶ 16. In reviewing whether a court erred in the implementation of its own scheduling order, we generally apply the abuse of discretion standard. *Id.*, citing *America's Floor Source, LLC v. Homes*, 191 Ohio App.3d 493, 2010-Ohio-6296, 946 N.E.2d 799, ¶ 46 (10th Dist.). We have reviewed the record and note that Roberts, who was represented by counsel at the time, did not object to the late filing of the reply.[1] Thus, he has waived all but plain error.

---

[1] Central Miami attempts to demonstrate that counsel for Roberts agreed to the requested extension by attaching e-mails exchanged between counsel. However, these e-mails are not a part of the record before us and will not be considered.

{¶ 12} "The plain error doctrine is not favored in civil appeals." *Daniel v. Walder*, 2d Dist. Montgomery No. 27558, 2017-Ohio-8914, ¶ 12, citing *Care Risk Retention Group v. Martin*, 191 Ohio App.3d 797, 2010-Ohio-6091, 947 N.E.2d 1214, ¶ 80 (2d Dist.). "Plain error in civil cases is defined as error that 'seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.' " *Id.*, quoting *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus. "Civil plain error is applied 'only in the extremely rare case.' " *Id.*

{¶ 13} The record does not contain any evidence that Roberts filed a written or oral objection to the reply during the month-long period of time between the date the reply was filed and the entry of the trial court's decision on February 2, 2022. More importantly, Roberts does not allege any prejudice stemming from the late filing. From our review, we cannot say Roberts has demonstrated an abuse of discretion, let alone plain error. Thus, we find no merit in this argument.

{¶ 14} The first assignment of error is overruled.

### III. No Duty Winter Rule/Open and Obvious Doctrine

{¶ 15} Roberts's second and third assignments of error, as written, state:

TRAIL COURT SECOND ASSIGNMENT OF ERROR IN GRANTING SUMMARY JUDGEMENT IN FAVOR OF THE DEFENDANT ON THE BASIS OF OHIO OPEN AND OBIVIOUS RULE WHERE MULTIPIE ISSUES OF FACT EXIST AND WHERE REASONABLE MINDS

COULD DIFFER ON WHETHER THAT THE HAZARD WAS OPEN AND OBIVIOUS

TRIAL COURT THIRD ASSIGNMENT OF ERROR CLAIMING THERE WAS NO NEGLIGENCE ON DEFENDANT PART TO KEEP BUILDING REASONABLE SAFE CONDITION AND HAD NO DUTY TO WARN DUE TO WINTER RULE AND THAT ATTENDANT CIRCUMSTANCES AND LATENT DEFECTS DID NOT APPLY

{¶ 16} In these assignments of error, Roberts challenges the trial court's decision to render summary judgment against him.

{¶ 17} Civ.R. 56(C) provides summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Zivich v. Mentor Soccer Club*, Inc., 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998). Our review of the trial court's decision to grant summary judgment against Roberts is de novo. *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997).

{¶ 18} With this standard in mind, we turn to the question of negligence as raised by Roberts. "[I]n order to establish actionable negligence, one seeking recovery must show the existence of a duty, the breach of the duty, and injury resulting proximately therefrom." *Perko v. Healthcare Servs. Group, Inc.*, 8th Dist. Cuyahoga No. 110267,

2021-Ohio-4216, ¶ 7, quoting *Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). The status of a person who enters the land of another defines the scope of the legal duty owed to that person. *Gladon v. Greater Cleveland Reg. Transit Auth.*, 75 Ohio St.3d 312, 315, 662 N.E.2d 287 (1996). It is undisputed in this case that Roberts was a business invitee on the property. With respect to business invitees, an owner's duty is to keep the premises in reasonably safe condition and to warn of dangers that are known to the owner. *Hill v. Mullins*, 2017-Ohio-1302, 88 N.E.3d 575, ¶ 14 (2d Dist.).

**{¶ 19}** However, a business owner's duty to business invitees does not extend to hazards from natural accumulations of ice and snow. *Tyrrell v. Invest. Assocs., Inc.*, 16 Ohio App.3d 47, 49, 474 N.E.2d 621 (8th Dist.1984). Further, business owners generally owe no duty to a business invitee to remove natural accumulations of ice and snow or to warn invitees of the dangers associated with such natural accumulation. *Brinkman v. Ross*, 68 Ohio St.3d 82, 83, 623 N.E.2d 1175 (1993). There is no such duty because "[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business invitee on his premises will discover those dangers and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45, 233 N.E.2d 589 (1968), paragraph two of the syllabus.

**{¶ 20}** There are two exceptions to this "no-duty" winter rule. One exists when the landowner is shown to have superior knowledge that the natural accumulation of snow and ice on the premises has created a condition substantially more dangerous to business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area. *Debie v. Cochran Pharmacy-Berwick, Inc.*,

11 Ohio St.2d 38, 227 N.E.2d 603 (1967), paragraph one of the syllabus; *LaCourse v. Fleitz*, 28 Ohio St.3d 209, 210, 503 N.E.2d 159 (1986). For example, a natural accumulation of snow which fills or covers a known deep hole in a parking lot is a condition substantially more dangerous than that normally associated with snow. *Mikula v. Tailors*, 24 Ohio St.2d 48, 57, 263 N.E.2d 316 (1970). The second exception exists where the landowner is actively negligent in permitting or causing an unnatural accumulation of ice or snow. *Lopatkovich v. Tiffin*, 28 Ohio St.3d 204, 207, 503 N.E.2d 154 (1986).

{¶ 21} Here, there is nothing in the record before us to demonstrate that the accumulation of snow or ice created a condition that was substantially more dangerous than that which is normally associated with snow or ice. In any event, Roberts relies on the second exception and argues the ice on which he slipped was an unnatural accumulation which was negligently created because Central Miami plowed snow from the parking lot and left it in piles on a slope at the property fence line. Roberts claims the snow piles melted and the water then ran down the slope, where it froze into a three- to four-foot patch of snow in front of the entrance ramp.

{¶ 22} "The term 'unnatural accumulation' refers to causes and factors other than such inclement weather conditions as low temperature, strong winds and drifting snow." *Corson v. N. Am. Truck Platform*, 2d Dist. Montgomery No. 19399, 2002-Ohio-6777, ¶ 12, citing *Porter v. Miller*, 13 Ohio App.3d 93, 95, 468 N.E.2d 134 (6th Dist.1983). In other words, "[u]nnatural accumulations are man-made or man-caused." *Id.* Roberts contends that by plowing the parking lot and moving the natural accumulation into piles on a sloped area, Central Miami created an unnatural accumulation. This court has

rejected Roberts's argument.

{¶ 23} Specifically, we have noted that "[w]hen snow is removed, it has to be placed somewhere, and 'a certain natural run-off of water is to be expected.' " *McDonald v. Koger,* 150 Ohio App.3d 191, 2002-Ohio-6195, 779 N.E.2d 1083, ¶ 9 (2d Dist.), quoting *Hoenigman v. McDonald's Corp.*, 8th Dist. Cuyahoga No. 56010, 1990 WL 1334, * 3 (Jan. 11, 1990). Thus, when a parking lot is plowed but some of the snow melts and forms an icy patch, the formed ice is considered a natural accumulation. *Id.* We have also stated that "snow placed on elevated islands causing a natural runoff of water that later froze into ice was not rendered an unnatural accumulation." *Koger* at ¶ 11.

{¶ 24} Roberts's deposition indicates he did not actually have information to indicate that the ice on which he slipped had not occurred naturally. Indeed, it is obvious that his claim that the snow piles at the fence line must have melted, causing water to run toward the ramp, and then the water refroze was nothing more than speculation. Roberts did not present any evidence to demonstrate that the temperature following the snow event was sufficiently warm to permit thawing of the snow piles, nor was there any evidence to demonstrate the ice had not formed prior to the plowing.

{¶ 25} We also note that Central Miami presented evidence, in the form of affidavits, that the snow on the parking lot was plowed in accordance with accepted practice and that it was properly placed at the property line. Roberts did not submit any evidence to refute this claim.

{¶ 26} Roberts next argues the trial court erred in rendering summary judgment because the ice patch was not open and obvious due to attendant circumstances. First,

he contends the patch consisted of black ice, thereby rendering it invisible upon normal inspection. He further argues that the lighting at the facility was insufficient to properly illuminate the parking lot, because the trucks parked at the building's loading docks created shadows on the parking lot. Thus, he contends Kauffman had been required to warn him of the danger.

{¶ 27} "If a danger is open and obvious, a property owner owes no duty of care to individuals lawfully on the premises." *Armstrong v. Best Buy Co., Inc.*, 99 Ohio St.3d 79, 2003-Ohio-2573, 788 N.E.2d 1088, ¶ 14. To be open and obvious, a hazard must not be concealed and must be discoverable by ordinary inspection. *Larrick v. J.B.T., Ltd.*, 2d Dist. Montgomery No. 21692, 2007-Ohio-1509, ¶ 11. The relevant issue is not whether an individual observes the condition, but whether the condition is capable of being observed. *Id.*, citing *Lydic v. Lowe's Cos., Inc.,* 10th Dist. Franklin No. 01AP-1432, 2002-Ohio-5001, ¶ 10.

{¶ 28} "Attendant circumstances" may affect the applicability of the open and obvious doctrine. An attendant circumstance is a factor that contributes to the fall and is beyond the control of the injured party. *Backus v. Giant Eagle, Inc.*, 115 Ohio App.3d 155, 158, 684 N.E.2d 1273 (7th Dist.1996). It has been defined to include any distraction that would come to the attention of a person in the same circumstances and reduce the degree of care an ordinary person would exercise at the time. *Long v. Speedway, LLC*, 2d Dist. Montgomery No. 26851, 2016-Ohio-3358, ¶ 10. "The attendant circumstances must, taken together, divert the attention of the person, significantly enhance the danger of the defect, and contribute to the injury." *Id.*

{¶ 29} This court has noted that the inability to see due to a truck blocking the light is an open and obvious danger. *Gibbs v. Speedway, LLC*, 2014-Ohio-3055, 15 N.E.3d 444, ¶ 29 (2d Dist.) Indeed, darkness itself is considered an open and obvious warning of danger. *McCoy v. Kroger Co.*, 10th Dist. Franklin No. 05AP-7, 2005-Ohio-6965, ¶ 14; *Johnson v. Regal Cinemas, Inc.*, 8th Dist. Cuyahoga No. 93775, 2010-Ohio-1761, ¶ 21. Further, we have held that black ice is a common condition associated with accumulations of snow and ice which does not present a risk that is substantially more dangerous than the risk of snow and ice. *Simpson v. Concord United Methodist Church*, 2d Dist. Montgomery No. 20382, 2005-Ohio-4534, ¶ 27.

{¶ 30} The evidence in the record indicated that Roberts regularly arrived at the facility prior to sunrise. There was no evidence that the lighting level was abnormal or different on the day of the fall from that to which Roberts was accustomed. Roberts was aware of both the snowy conditions and the low lighting in the parking lot. On the day of his fall, it was the middle of winter, and there had been substantial snowfall two days prior. Roberts was able to observe that the lot had been plowed and that the snow had been piled at the fence line at the perimeter of the property. Thus, although Roberts testified that it was still dark outside when he fell and that he did not see the ice prior to falling, whether he saw the ice was not controlling. He should have reasonably anticipated the presence of ice near the snow piles, and there was no evidence that Kauffman or Central Miami did anything to conceal the danger from him. *See Murphy v. McDonald's Restaurants of Ohio, Inc.*, 2d Dist. Clark No. 2010-CA-4, 2010-Ohio-4761, ¶ 28. Thus, we reject Roberts's attendant circumstances argument.

{¶ 31} Based upon our review of the record before us, we agree with the trial court that Roberts failed to demonstrate a genuine issue of material fact. Therefore, the trial court did not err in rendering judgment against him. Accordingly, the second and third assignments of error are overruled.

### IV.    Nondelegable Duty Doctrine

{¶ 32} Roberts's fourth assignment of error of error states:

TRIAL COURT FOURTH ASSIGNMENT OF ERROR NOT CONSIDERING NON-DELEGABLE DUTIES DOCTRINE

{¶ 33} Roberts asserts the trial court erred by failing to consider the nondelegable duties doctrine.

{¶ 34} "It is well settled that a principal generally is not responsible for the negligence of an independent contractor over whom it retained no right to control the manner or mode of doing the contracted-for work." *Trotwood v. S. Cent. Constr., L.L.C.*, 192 Ohio App.3d 69, 2011-Ohio-237, 947 N.E.2d 1291, ¶ 28 (2d Dist.), citing *Clark v. Southview Hosp. & Family Health Ctr.*, 68 Ohio St.3d 435, 438, 628 N.E.2d 46 (1994). "There are, however, exceptions to this general rule, several of which stem from the nondelegable duty doctrine. Nondelegable duties arise in various situations that generally fall into two categories: (1) affirmative duties that are imposed on the employer by statute, contract, franchise, charter, or common law and (2) duties imposed on the employer that arise out of the work itself because its performance creates dangers to

others, i.e., inherently dangerous work." *Pusey v. Bator*, 94 Ohio St.3d 275, 279, 762 N.E.2d 968 (2002), citing Prosser & Keeton, *The Law of Torts* (5 Ed.1984) 511-512, Section 71; *Albain v. Flower Hosp.*, 50 Ohio St.3d 251, 260-261, 553 N.E.2d 1038 (1990). "If the work to be performed fits into one of these two categories, the employer may delegate the work to an independent contractor, but he cannot delegate the duty. In other words, the employer is not insulated from liability if the independent contractor's negligence results in a breach of the duty." *Id.*

**{¶ 35}** We first note that Roberts did not raise any arguments regarding the nondelegable duties doctrine in the trial court. As a general rule, "arguments raised for the first time on appeal" are barred. *Cawley JV, L.L.C. v. Wall St. Recycling, L.L.C.*, 2015-Ohio-1846, 35 N.E.3d 30, ¶ 17 (8th Dist.). An issue not asserted in the trial court is "deemed to have been waived or forfeited" on appeal. (Citations omitted.). *Deutsche Bank Natl. Tr. Co. v. Stone*, 2021-Ohio-3007, 176 N.E.3d 854, ¶ 12 (10th Dist.). A party cannot argue an issue "which the trial court had no opportunity to address." (Citation omitted.) *Nolan v. City Wide Dev. Corp.*, 2d Dist. Montgomery No. 22675, 2009-Ohio-65, ¶ 15.

**{¶ 36}** More importantly, we have not found, and Roberts has not cited, any statutory or case law suggesting that the nondelegable duty doctrine is applicable to this case.

**{¶ 37}** The fourth assignment of error is overruled.

## V. Conclusion

**{¶ 38}** All of Roberts's assignments of error being overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Allen Keith Roberts
Molly G. Vance
Brian L. Wildermuth
Chad M. Sizemore
Hon. Robert G. Hanseman
Hon. William H. Wolff, Jr., Visiting Judge