[Cite as *Arnett v. Archdiocese of Cincinnati*, 2025-Ohio-4679.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| JESSE ARNETT ET AL. | : | |
| | : | C.A. No. 30452 |
| Appellants | : | |
| | : | Trial Court Case No. 2024 CV 00331 |
| v. | : | |
| | : | (Civil Appeal from Common Pleas |
| ARCHDIOCESE OF CINCINNATI ET AL. | : | Court) |
| | : | |
| | : | **FINAL JUDGMENT ENTRY &** |
| Appellees | : | **OPINION** |

. . . . . . . . . . .

Pursuant to the opinion of this court rendered on October 10, 2025, the judgment of the trial court is affirmed.

Costs to be paid as stated in App.R. 24.

Pursuant to Ohio App.R. 30(A), the clerk of the court of appeals shall immediately serve notice of this judgment upon all parties and make a note in the docket of the service. Additionally, pursuant to App.R. 27, the clerk of the court of appeals shall send a certified copy of this judgment, which constitutes a mandate, to the clerk of the trial court and note the service on the appellate docket.

For the court,

*Christopher B. Epley*

CHRISTOPHER B. EPLEY, PRESIDING JUDGE

TUCKER, J., and HANSEMAN, J., concur.

OPINION

BARRY W. MANCZ, Attorney for Appellants
MARK G. ARNZEN, JR. & LAUREN E. GETGEY, Attorneys for Appellees

EPLEY, P.J.

{¶ 1} Appellants Jesse and Stephanie Arnett appeal from the judgment of the Montgomery County Court of Common Pleas, which granted summary judgment to Appellees, the Archdiocese of Cincinnati and St. Charles Borromeo Parish, in this slip-and-fall tort case. For the reasons that follow, the judgment of the trial court is affirmed.

## I.    Facts and Procedural History

{¶ 2} On the "chilly and blustery" evening of February 12, 2022, Jesse Arnett and his then-five-year-old daughter arrived at St. Charles Borromeo School in Kettering for a father-daughter dance. The parking lot was full due to a basketball game at Archbishop Alter High School next door, so Arnett parked near the playground to the rear of the school. According to his deposition, "[t]here was very light snow, . . . blustery snow like we experience here in Ohio," the parking lot was "damp," and there were snow piles in the lot from where it had previously been plowed. Arnett Dep. Tr. 17-18.

{¶ 3} After finding a parking spot, Arnett got his daughter out of the car and carried her through the parking lot towards the parish activity center where the dance was being held. Arnett walked twenty-five to thirty feet and slipped and fell on what he described as "black ice." He sustained a compound fracture of his left leg. Several passersby quickly came to his aid, and an ambulance was dispatched. Arnett was transported to Kettering Hospital, where he was stabilized, and doctors performed surgery the following day. His injuries were

2

so severe that a titanium rod and screws were inserted to help stabilize the bone during the recovery process.

{¶ 4} According to Arnett and his wife, Stephanie, the recovery process was long and challenging. Arnett testified that he missed three weeks of work, and when he returned, he was confined to a desk job. Even at the time of his deposition in October 2024, Arnett reported that he was still experiencing pain and mobility issues. He was, however, able to perform his job duties and fulfill his responsibilities. Arnett Dep. Tr. 45.

{¶ 5} On January 22, 2024, the Arnetts filed their complaint against the Archdiocese of Cincinnati, the St. Charles Borromeo parish, and Anthem Blue Cross and Blue Shield. The complaint alleged that because of the defendants' negligence, Arnett was injured and incurred medical bills in excess of $120,000. It further asserted that he should be compensated for mental and physical pain and lost wages. The complaint claimed that Stephanie "has incurred and will in the future incur additional expenses in the care and treatment of her husband," and that she has "suffered a loss of time and enjoyment of regular, ordinary and usual activities" and has been "deprived of the company, comfort, society, consortium and companionship of her husband."

{¶ 6} After filing their answer and conducting depositions, the archdiocese and St. Charles filed a joint motion for summary judgment. They argued that Arnett's fall was a result of a natural accumulation of black ice; thus, pursuant to the "no-duty winter rule," they owed no duty to remove the ice nor warn Arnett of potential dangers associated with the natural accumulation in the St. Charles parking lot. Further, the archdiocese and St. Charles argued that because the negligence claim failed, Stephanie's derivative claim for loss of consortium must fail as well.

3

**{¶ 7}** In contrast, the Arnetts claimed that the "no-duty winter rule" did not apply because St. Charles voluntarily assumed a duty to remove the ice and snow based on prior conduct. They also argued that the parish's maintenance personnel failed to reasonably discharge their duties when they did not inspect the lot prior to the dance. The Arnetts further contended that even if St. Charles did not assume a duty, exceptions to the "no-duty winter rule" applied because the piles of snow created when the lot was plowed constituted "unnatural" and improper accumulations. Finally, they argued that the black ice was not an open and obvious hazard.

**{¶ 8}** On March 25, 2025, the trial court granted the motion for summary judgment, finding that there were no genuine issues of material fact and that reasonable minds could only conclude that the archdiocese and St. Charles were not negligent. It agreed that the "no-duty winter rule" applied and that the Arnetts failed to provide sufficient evidence that either exception to the rule was relevant. And because the underlying negligence claim failed, the trial court concluded that Stephanie's derivative claim failed, too.

**{¶ 9}** The Arnetts have filed a timely appeal that raises one assignment of error.

**II.    Negligence**

**{¶ 10}** In their assignment of error, the Arnetts allege that the trial court erred in granting summary judgment for the archdiocese and the parish for three reasons. First, they believe that the "no-duty winter rule" does not apply because of a contractual relationship between the parties. Second, they assert that there are genuine issues of material fact with respect to the openness and obviousness of the hazard. Finally, they contend that exceptions to the "no-duty winter rule" apply. We address these issues in a way that facilitates our analysis.

4

<u>Summary Judgment</u>

{¶ 11} Pursuant to Civ.R. 56(C), a movant is entitled to summary judgment when that party demonstrates that there is (1) no issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the non-moving party. *Rhododendron Holdings, LLC v. Harris*, 2021-Ohio-147, ¶ 22 (2d Dist.).

{¶ 12} "The burden of demonstrating that no genuine issues exist as to any material fact falls upon the moving party requesting a summary judgment." *Harless v. Willis Day Warehousing Co., Inc.*, 54 Ohio St.2d 64, 66 (1978). Once the moving party has satisfied its burden of showing that there is no genuine issue of material fact, the burden shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The nonmoving party cannot rely upon the mere allegations or denials in the pleadings but must provide evidence setting forth specific facts showing that there is a genuine issue of material fact for trial. Civ.R. 56(E). *Accord Geloff v. R.C. Hemm's Glass Shops, Inc.*, 2021-Ohio-394, ¶ 14 (2d Dist.). When the standard is met, summary judgment must be awarded as a matter of law.

{¶ 13} We review the trial court's ruling on a summary judgment motion de novo. *Martcheva v. Dayton Bd. of Edn.,* 2021-Ohio-3524, ¶ 35 (2d Dist.).

<u>Negligence</u>

{¶ 14} The Arnetts' lawsuit is based on their belief that the archdiocese and parish were negligent in the upkeep of the parking lot on the night Arnett fell. To establish an actionable negligence claim, one seeking recovery must show (1) the existence of a duty of care; (2) the breach of the duty; and (3) that as a direct and proximate result of the breach,

5

the plaintiff was injured. *Strother v. Hutchinson,* 67 Ohio St.2d 282, 285 (1981). Whether a duty exists is a question of law. *Mussivand v. David*, 45 Ohio St.3d 314, 318 (1989).

{¶ 15} In premises liability cases like this, the status of the person who enters the land of another (e.g., a trespasser, licensee, or invitee) defines the scope of the duty owed by the landowner. *Quinn v. Montgomery County Educational Serv. Ctr.*, 2005-Ohio-808, ¶ 11 (2d Dist.). There is no dispute that Arnett was an invitee on St. Charles's property. Consequently, the parish "ha[d] a duty to exercise ordinary care in maintaining its premises in a reasonably safe condition in order to ensure that the invitee was not unnecessarily and unreasonably exposed to danger." *Id*.

{¶ 16} When the danger is "open and obvious," however, the owner does not owe a duty to protect invitees. *Blair v. Vandalia United Methodist Church*, 2011-Ohio-873, ¶ 15 (2d Dist.). "Open and obvious hazards are those hazards that are neither hidden nor concealed from view and are discoverable by ordinary inspection." *Id*. The dangerous condition does not have to be seen by the plaintiff for it to be "open and obvious"; instead, the determinative issue is whether the condition is *observable*. (Emphasis added.) *Id*. *Accord Larrick v. J.B.T*., 2007-Ohio-1509, ¶ 11 (2d Dist.) (the relevant issue is whether the condition is capable of being observed).

{¶ 17} There is one more important, related doctrine here—the "no-duty winter rule." "[I]t is well established that an owner or occupier of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow . . . or to warn the invitee of the dangers associated with such natural accumulations . . . ." *Brinkman v. Ross*, 68 Ohio St.3d 82, 83 (1993); *Roberts v. Kauffman 4 Dayton, Ltd*., 2022-Ohio-3164, ¶ 19 (2d Dist.). This is because "[t]he dangers from natural accumulations of ice and snow are ordinarily so obvious and apparent that an occupier of premises may reasonably expect that a business

6

invitee on his premises will discover those dangers and protect himself against them." *Sidle v. Humphrey*, 13 Ohio St.2d 45 (1968), paragraph two of the syllabus.

{¶ 18} There are two exceptions to the "no-duty winter rule." "One exists when the landowner is shown to have superior knowledge that the natural accumulation of snow and ice on the premises has created a condition substantially more dangerous to business invitees than they should have anticipated by reason of their knowledge of conditions prevailing generally in the area." *Roberts* at ¶ 20. A well-known example of this is snow that fills or covers a known deep hole in a parking lot. *Mikula v. Tailors*, 24 Ohio St.2d 48, 57 (1970).

{¶ 19} The other exception is when the landowner is actively negligent in permitting or causing an unnatural accumulation of ice or snow. *Lopatkovich v. Tiffin*, 28 Ohio St.3d 204, 207 (1986). "The term 'unnatural accumulation' refers to causes and factors other than such inclement weather conditions as low temperature, strong winds and drifting snow." *Corson v. N. Am. Truck Platform*, 2002-Ohio-6777, ¶ 12 (2d Dist.), citing *Porter v. Miller*, 13 Ohio App.3d 93, 95 (6th Dist. 1983). In other words, "[u]nnatural accumulations are man-made or man-caused." *Id.*

Analysis

{¶ 20} The first and third arguments of the Arnetts revolve around the "no-duty winter rule." They first claim that based on the tuition they paid for their daughter's education, they were in a contractual relationship with the parish and archdiocese, and therefore, the rule does not apply. According to the Arnetts, because "they [were] not simply business invitees," the parish and archdiocese had a heightened "duty to maintain safe grounds in the winter and to warn patrons of the existence of hazards." Appellants' Br., p. 5. This argument has been waived, though, because it was not raised below. *See Credit Invests., Inc. v. Obanion*,

7

2014-Ohio-5799, ¶ 15 (2d Dist.) ("Because appellants failed to raise these issues in the trial court, they have waived these arguments on appeal."); *State v. Blair*, 70 Ohio App.3d 774, 793 (2d Dist. 1990) ("By not presenting the trial court with this argument, [Appellant] has waived it on appeal."); *Budz v. Estate of Somerfield*, 2023-Ohio-155, ¶ 31 (2d Dist.) ("[I]f the nonmoving party fails to raise an issue when responding to the moving party's motion for summary judgment, the nonmoving party has waived that issue on appeal.").

{¶ 21} The Arnetts also argue that St. Charles voluntarily assumed a duty to remove the ice and snow from the parking lot because it employs a maintenance staff whose jobs were to "maintain safe grounds." In support of this proposition, the Arnetts cite two cases: *Mizenis v. Sands Motel, Inc.*, 50 Ohio App.2d 226 (6th Dist. 1975) and *Hammond v. Moon*, 8 Ohio App.3d 67 (10th Dist. 1982).

{¶ 22} In *Mizenis*, the plaintiff, a motel guest, slipped on icy stairs that were the only means of egress and ingress from his second-floor room. *Mizenis* at 226-227. Despite multiple warnings from the plaintiff about the hazardous conditions of the stairs and repeated requests to treat the steps with salt, the motel failed to act and Mizenis eventually fell and was injured. *Id.* at 227.

{¶ 23} The trial court granted summary judgment in favor of the motel, and Mizenis appealed. Upon review, the court of appeals held that an innkeeper has a duty to exercise reasonable care to maintain common access areas, such as stairways, in a reasonably safe condition. *Id.* at 230. This duty comes from the special relationship between an innkeeper and guest, which is analogous to that of a landlord and tenant. *Id.* The court found the motel's failure to correct the dangerous condition of the stairs, despite multiple warnings, raised a genuine issue of fact as to whether it breached its duty of care. *Id.* at 229-230, 232.

8

{¶ 24} In *Hammond*, the plaintiff suffered injuries after she slipped and fell while walking down the back steps of her office on a snowy day. *Hammond*, 8 Ohio App.3d at 67 The appellate court noted that a landlord has a general duty to maintain common areas (such as the steps leading to an office) in a reasonably safe condition for tenants and by extension, their employees. *Id.*, quoting *Davies v. Kelley*, 112 Ohio St. 122 (1925), paragraph two of the syllabus. And while a landlord, under normal circumstances, is not obligated to remove natural accumulations of ice and snow, a duty can develop if he or she has expressly or impliedly assumed that duty. *Id.* at 68.

{¶ 25} Both cases are distinguishable due to the additional duties imposed by the contractual relationships between the parties—motel-guest and landlord-tenant, respectively. Even if the Arnetts had not waived their position that there was a contractual relationship between them and the archdiocese, parish, or school based on their daughter's enrollment at St. Charles, they have provided no legal basis to support it. Arnett was an invitee, a class of persons which the archdiocese and parish owed no enhanced duty of care. As one of our sister districts has previously said, "any assumption of the duty to remove natural accumulations of snow and ice must arise from the contractual relationship between the landlord and tenant." *Bowen v. Columbus Airport Ltd. Partnership*, 2008-Ohio-763, ¶ 26 (10th Dist.).

{¶ 26} We reject *Hammond*'s implied course of conduct rationale for another reason: it is bad policy. "[I]mposing a duty . . . to remove ice and snow through an 'implied course of conduct' theory would discourage landlords from ever attempting to remove ice and snow from the common areas of their premises as a courtesy to their tenants, and would, therefore, make those areas less safe." *Hill v. Monday Villas Property Owners Assn.*, 2012-Ohio-836, ¶ 23, fn. 1 (2d Dist.). The Tenth District Court of Appeals found that:

> [I]f plaintiffs' position were adopted, a premises owner who does absolutely nothing to clear ice and snow from his properties, and allows such elements to accumulate as they will, will be entirely immune from liability as a consequence of his inaction. By contrast, a premises owner who does what he can to combat the dangerous conditions frequently recurring in our climate will be opening himself up to potential lawsuits from those who slip and fall on the inevitable patches of ice and snow eluding the plow, shovel and salt.

(Cleaned up.) *Tom v. Catholic Diocese of Columbus*, 2006-Ohio-4715, ¶ 14 (10th Dist.).

{¶ 27} Ultimately, the Arnetts' claims depend on the "no-duty winter rule" doctrine. An owner of land ordinarily owes no duty to business invitees to remove natural accumulations of ice and snow or to warn of the dangers associated with those natural accumulations. *See Roberts*, 2022-Ohio-3164 at ¶ 19 (2d Dist.). Arnett's own deposition makes it clear that the weather conditions were to blame for his fall. He initially described the weather on the night of his fall as "chilly and blustery," and that "there was very light snow . . . blustery snow like we experience here in Ohio." Arnett Dep. Tr. 14-17. He also testified that the parking lot was "damp" and that the black ice, and nothing else, caused his fall. Arnett Dep. Tr. 18. *See also* Arnett Dep. Tr. 55-56 ("There was wintery precipitation in the air that evening. The conditions for the entire day were able to create said issue."); Stephanie Arnett Dep. Tr. 11 ("It was freezing cold. As I recall, there was a little bit of snow . . . in the air . . . ."). Based on his own testimony, we can conclude that Arnett was aware that the conditions could, and did, create a slippery, dangerous parking lot. Not only did the archdiocese and St. Charles lack a duty to warn about the conditions or remove the natural accumulations of ice and snow, but also Arnett was aware of the potential for danger.

10

**{¶ 28}** Having concluded that the "no-duty winter rule" applies, we turn now to the exceptions. The Arnetts first argue that snow piles in the parking lot left over from snow that had accumulated more than a week earlier created a more dangerous condition than Jesse would have anticipated. They contend the piles of snow posed "a continuing hazard." While their appellate brief is unclear as to how the piles of snow created the dangerous conditions, they seem to make the case that Arnett's ability to see any hazards was obscured by the snow piles. However, there is no evidence that the archdiocese or the parish knew that the snow and ice in the lot concealed a danger that Arnett would not have been aware of or anticipated, i.e., a hole covered by snow. In fact, Arnett testified at his deposition that "there was wintry precipitation in the air that evening. The conditions for that entire day were able to create said issue [black ice]." Arnett Dep. Tr. 56. His testimony suggests that he was aware of the danger, but even assuming for the sake of argument he was not, "[t]he formation of black ice on pavement . . . is an ordinary and expected consequence of winter precipitation and should be anticipated by a business invitee . . . ." *Miller v. Tractor Supply Co.*, 2011-Ohio-5906, ¶ 14 (6th Dist.).

**{¶ 29}** The second exception to the "no-duty winter rule"—the accumulations were a result of the owner's negligence or were "unnatural" or "man-made"—also fails. The record indicates that nine days before Arnett's accident, approximately six inches of snow fell in Kettering. Accordingly, St. Charles contracted with a landscaping company to clear the parking lot, and the snow was plowed into piles in various locations in the lot. The Arnetts seem to imply that the snow piles were "unnatural." This argument has been rejected by Ohio courts. *See Burckholter v. Dentistry for You*, 2009-Ohio-1654, ¶ 19 (3d Dist.) ("the plowing of a parking lot to remove natural accumulation of snow and ice does not automatically change the nature of that accumulation from natural to unnatural"); *Watts v.*

11

*Richmond Run #1 Condo. Unit Owners Ass'n*., 2013-Ohio-2695, ¶ 14 (8th Dist.) (piles of plowed snow accumulated at the edge of the street are "an expected phenomenon, and one often encountered in everyday life in Ohio during winter"). The piles of snow in St. Charles's parking lot were natural accumulations and do not invoke the exception to the "no-duty winter rule."

{¶ 30} If the argument is that run-off from the snow piles caused the black ice, courts throughout the state, including this one, have held that ice in that scenario is a natural accumulation. *See McDonald v. Kroger,* 2002-Ohio-6195, ¶ 7 (2d Dist.) (rejecting the argument that frozen runoff from piles of plowed snow is an unnatural accumulation because human intervention has caused the snow to be piled); *Watts* at ¶ 15 (melting snow from a pile that refreezes and causes ice is a natural accumulation); *Davis v. The Timbers Owners Assn*., 2000 WL 43709, *2 (1st Dist. Jan. 21, 2000) (holding that meltwater from piled snow that had refrozen was a natural accumulation).

{¶ 31} Having found that the accumulations were natural, the question of whether the archdiocese or St. Charles negligently allowed unnatural accumulations is inapposite.

{¶ 32} In their second argument in their assignment of error, the Arnetts assert that the trial court erred in concluding that there were no material issues of fact with respect to the openness and obviousness of the hazard.

{¶ 33} The "open and obvious" doctrine obviates the landowner's duty to warn of dangers that are open and obvious and acts as a bar to any negligence claims. *Armstrong v. Best Buy Co., Inc*., 2003-Ohio-2573, ¶ 5. "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those

dangers and take appropriate measures to protect themselves.'" *Id.*, quoting *Simmers v. Bentley Constr. Co.*, 64 Ohio St.3d 642, 644 (1992).

{¶ 34} The Sixth District Court of Appeals has explained that the rationale for the "no-duty winter rule" is more expansive than that of the "open and obvious" doctrine. "The no-duty winter rule assumes everyone will appreciate and protect themselves against risks associated with natural accumulations of ice and snow; the open and obvious doctrine assumes only those who could observe and appreciate the danger will protect themselves against it." *Miller*, 2011-Ohio-5906, at ¶ 9 (6th Dist.), citing *Sherlock v. Shelly Co.,* 2007-Ohio-4522, ¶ 21 (10th Dist.). This means a finding that the "no-duty winter rule" applies to a slip and fall caused by naturally occurring ice and snow eliminates the need to determine the applicability of the open and obvious doctrine. *Accord Oliver v. Fox's Food, LLC.*, 2023-Ohio-1551, ¶ 17 (10th Dist.).

{¶ 35} Having previously concluded that the "no-duty winter rule" applies in this case, there is no need to analyze the Arnetts' "open and obvious" argument because it is subsumed into the "no-duty winter rule."

{¶ 36} Based on the "no-duty winter rule," we conclude, as the trial court did, that the Archdiocese of Cincinnati and St. Charles had no duty to warn Arnett of the possible dangers in the parking lot and had no duty to remove the ice he slipped on. Arnett's own deposition testimony revealed that he was aware that the weather conditions that night could have resulted in ice and snow in the parking lot. Therefore, the Arnetts' assignment of error is overruled.

### III.    Conclusion

{¶ 37} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, J., and HANSEMAN, J., concur.